UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELG, a minor by Parent and
Next Friend LATOREYA TILL,

          Plaintiff,

v.

JUDGE KENNETH KING,
individually; UNIVERSAL
PROTECTION SERVICES
d/b/a ALLIED UNIVERSAL
SECURITY SERVICES
and/or ALLIED UNIVERSAL
SECURITY SERVICES, LLC;
JOHN DOE COURT
OFFICER, individually; and
JANE ROE COURT OFFICER
individually,

          Defendants.

Case No.
Hon.

---

**FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**
JAMES J. HARRINGTON (P65351)
GARY N. FELTY, JR. (P55554)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555/F: (248) 355-3148
j.harrington@fiegerlaw.com
g.felty@fiegerlaw.com

---

## PLAINTIFF'S COMPLAINT

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-3148

**NOW COMES**, Plaintiff, ELG, a minor by Parent and Next Friend LATOREYA TILL, who states the following for her Complaint against the defendants:

Ms. ELG fell asleep in class. She was the involuntary attendee of a guest lecture that her employer/vocational trainer arranged to occur. The venue of the lecture was room 234 of the 36th District Court. Defendant, JUDGE KENNETH KING, was the guest lecturer. Court was not in session.

During the lecture, Defendant King felt personally disrespected when the teenager expressed her opinion of the lecture by nodding off during the presentation. Streaming the lecture live from the court's YouTube platform, Defendant JUDGE KING decided to enact his own version of the reality show "Scared Straight," by ridiculing Ms. ELG in front of her peers and the defendant's online followers. He made Ms. ELG an unwitting actor in his improv version of "The Star Chamber." He berated the minor on a live platform, ordered her jailed, caused her to be handcuffed, demanded that she take off her clothes and change into jail garb, imprisoned her for hours, and then conducted a

2

fake trial with her classmates (and possibly his internet followers) as her jurors and his audience.

Defendant King's extrajudicial actions violated the minor's constitutional rights, subjecting him and the other defendants to liability as stated in the balance of this Complaint. Any defense of immunity will fail.

## JURISDICTION

1.     This is a civil action for monetary damages arising out of the extrajudicial conduct of Defendant JUDGE KENNETH KING, and his contracted court officers, that occurred on August 13, 2024, that was broadcast live on YouTube and may have been broadcast under the private Facebook handle "King's Corner."

2.     This case is being brought pursuant to 42 U.S.C. §1983, which guarantees citizens of the United States an action at law against any person who, acting under color of law, deprives them of their rights secured by the United States Constitution, as well as the laws and common law of the State of Michigan.

3

3.     This case is also brought pursuant to 28 U.S.C. §1367(a), which permits the Court to exercise supplemental jurisdiction over state law claims that are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4.     Plaintiff seeks punitive damages, costs, interest, expert fees, and attorney fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and all additional damages otherwise allowed at common law or by statute.

5.     The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

6.     This Court has jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 28 U.S.C. §1367.

## PARTIES AND VENUE

7.     The plaintiff, ELG, is a minor whose personal identity was disclosed by Defendant King. (ELG may hereafter be referred to as "plaintiff," "the minor," or Ms. ELG, as appropriate in context).

8.     This matter is brought by ELG's mother, LATOREYA TILL, as Next Friend, who, at all material times, was a resident of Michigan, living in Wayne and Macomb Counties.

9.     Defendant, JUDGE KENNETH KING, was at all material times and upon information and belief, a resident of Wayne County, Michigan, and/or a person who conducted business in the County of Wayne.

10.     Defendant, UNIVERSAL PROTECTION SERVICES, was at all material times a domestic for-profit corporation that does business as ALLIED UNIVERSAL SECURITY SERVICES and/or ALLIED UNIVERSAL SECURITY SERVICES, LLC, which are domestic limited liability companies, that continuously and systematically do business in Wayne County. (These entities are hereafter referred to as "Universal.")

11.     Defendants, JOHN DOE COURT OFFICER, and JANE ROE COURT OFFICER, were at all material times and upon information and belief, residents of Wayne County, Michigan who were acting within the course and scope of their employment by the Universal defendants within Wayne County.

12.    Defendants, JUDGE KENNETH KING, JOHN DOE COURT OFFICER, and JANE ROE COURT OFFICER, were at all material times, acting extra-judicially, under the guise of state authority when they abused their power and violated Ms. ELG's civil rights and committed the torts alleged herein.

13.    All material events occurred in Detroit, Michigan, located in Wayne County, Michigan.

14.    Venue lies in the Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

15.    The events giving rise to this lawsuit occurred on August 13, 2024.

16.    Fifteen-year-old Ms. ELG was participating in a vocational program run by a local nonprofit organization.

17.    The nonprofit employed teenagers to plant foliage throughout the city of Detroit and organized programs to teach youths how to succeed in the workforce.

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

6

18.   The nonprofit had organized a field trip to the 36th District Court for August 13th where students who wanted to be attorneys could learn about a career as a lawyer.

19.   The venue selected was the 36th District Court.

20.   The lecturer was Defendant JUDGE KING.

21.   Ms. ELG did not learn about the scheduled trip until she arrived at her worksite, prepared to plant trees.

22.   She was not interested in the practice of law; and instead aspired to be a cardio-thoracic surgeon.

23.   Permission for Ms. ELG's participation in the trip was not sought from her mother, otherwise she would have stayed home or attempted in advance to arrange to work with a crew that was not scheduled to travel to the court.

24.   Ms. ELG arrived for work and was bused to the court building.

25.   When she arrived, she was seated in the gallery of the courtroom assigned to Defendant JUDGE KING.

26.   Court was briefly called, and the young people were required to observe a homicide proceeding that was presided over by Defendant JUDGE KING.

27.    The court went into recess after the proceeding and Defendant JUDGE KING's role changed from judge to teacher.

28.    Defendant JUDGE KING left the bench and asked the young people whether any of them wanted to be a judge.

29.    One young man raised his hand, and Defendant JUDGE KING disrobed and donned the child with his judicial apparel and seated him at the bench, before proceeding with a monologue regarding his practice of law.

30.    Although the court was no longer in session, Defendant JUDGE KING broadcast his lecture publicly using the court's YouTube platform, permitting his followers and fan base to both observe and comment.

31.    An otherwise shy, polite and courteous Ms. ELG, who was not interested in the practice of law and who had had a rough night's sleep, unintentionally expressed her disinterest in the proceedings by nodding off after being exposed to a court hearing that forced her to relive a traumatic event, causing her to shut down.

32.    Though neither she nor her mother consented to her attendance at a hearing involving violence, or the use of her

image and identity on a public platform during an educational seminar, Defendant JUDGE KING, publicly berated and humiliated Ms. ELG for nodding off, falsely casting her as a juvenile delinquent, because, as he later said, he was disrespected.

33.    Ms. ELG quietly apologized, and Defendant JUDGE KING temporarily moved on; however, despite her efforts to be attentive, the child could not stop her mind from seeking its safe space and nodding back off.

34.    Defendant JUDGE KING confronted Ms. ELG again; for sleeping in class, instructing her that perhaps she needed to go to the restroom and get a drink of water.

35.    Defendant JUDGE KING told Ms. ELG to go relieve herself because of what he had in store for her.

36.    It is apparent that he developed a plan for the amusement of his followers and fan base to cast Ms. ELG, unwittingly, in what he later described as his own episode of "Scared Straight."

37.     Ms. ELG was greeted by Defendant JOHN DOE court officer as she returned to the gallery to sit  beside her classmates before Defendant JUDGE KING convened court.

38.     Defendant JOHN DOE court officer first derided Ms. ELG and accused her of disrespecting the judge.

39.     Then, Defendant JOHN DOE court officer directed Ms. ELG to the side of the bench and restricted her movement by ordering her to stand still, as a real defendant was escorted out of a detention cell.

40.     Defendant JOHN DOE court officer next directed Ms. ELG into the detention cell and locked her inside while Defendant JUDGE KING brought court into session and called his first case.

41.     Approximately ten minutes later, Defendant JANE ROE court officer opened the detention cell, handcuffed Ms. ELG, and directed her to another cell where she was told to strip her clothing and put on a jail jumpsuit.

42.     Ms. ELG removed her hoodie but told Defendant JANE ROE court officer that she would not take off the rest of her clothing.

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

43. Evidencing that Defendant JANE ROE and Defendant JOHN DOE court officers knew that Ms. ELG was an unwilling participant in a farce, she was permitted to put the jumpsuit over her clothing before being handcuffed and transported back to the original holding cell, where she was held captive for hours, before being re-cuffed and brought into the courtroom after the close of the day's proceedings, where a fake trial was convened.

44. Further evidence of the phoniness of Defendant JUDGE KING's reality show is the absence of a case number for Ms. ELG.

45. Additionally, despite the entire episode being broadcast on YouTube, upon information and belief, there is no court record of the sham proceedings.

46. The sham proceedings continued.

47. Defendant JUDGE KING caused a random private attorney to pose as counsel for Ms. ELG.

48. On live internet "television," Defendant JUDGE KING coerced a minor to disclose her name and other personal information, such as her age and the name of her high school, to his followers of the show.

11

49.    Defendant JUDGE KING then threatened to send Ms. ELG to "juvey," with vulgar stories of beatings and feces at the county's juvenile detention center, falsely casting her as a dishonest, disrespectful delinquent and simultaneously publicly disparaging the conditions of a county-operated facility where judges with appropriate jurisdiction and proper findings of fact, having been determined with due process of law, are required to send juvenile offenders.

50.    Then, making a mockery of the justice guaranteed by the due process clauses of the United States Constitution, while panning the camera to focus upon his juvenile audience for the benefit of his internet fans, Defendant JUDGE KING asked Ms. ELG's peers to serve as a fake jury of public opinion and decide whether to let her go home to her mother and grandmother, or to serve time in the juvenile jail that he had but moments before denigrated as unfit.

51.    Of course, Defendant JUDGE KING was not going to send Ms. ELG to jail as there was no actual case or controversy and because he admitted to the press that the foregoing was

12

simply his version of "Scared Straight," because he was going to teach this teen a lesson for disrespecting him.

52.     Rather than using the press as an opportunity to extend an apology for what many have labeled as extreme and outrageous conduct on the judge's part, Defendant JUDGE KING doubled down by telling reporters that Ms. ELG had a bad attitude, was disrespectful; and required his mentorship, while simultaneously offering a watered-down acknowledgement that he lacked jurisdiction to hold Ms. ELG in contempt, knowing that the conduct that disturbed him occurred during a lecture where he served not as judge, but as teacher, in a venue that he had transformed from courtroom to classroom, telling the public that he probably did not have the authority to jail her.

53.     Common sense and the facts demonstrate that a grown man became rattled by a young girl that he falsely concluded to be and cast as a delinquent, who was actually a fragile teenager forced to attentively face a past trauma during an actual prior court proceeding that had ended, before shutting down during class.

54.    As a result of his anger, the defendant immaturely decided to teach the girl a lesson in front of her peers and his internet audience.

## **DUE PROCESS**

55.    Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

56.    Had there been an actual case or controversy, Ms. ELG would have been required to be provided with due process of law.

57.    The Fourth Amendment to the United States Constitution guarantees that a person will not be subjected to unreasonable searches and seizures.

58.    The Fifth and Fourteenth Amendments to the United States Constitution guarantee that no person will be compelled to be a witness against herself nor be deprived of her liberty without due process of law.

59.   The   Sixth   Amendment   to   the   United   States Constitution guarantees, among other things, that a person will not be subject to prosecution without representation of her choosing.

60.   The   Eighth   Amendment   guarantees   that   unusual punishments will not be inflicted upon citizens.

61.   The   Constitution   of   the   State   of   Michigan   affords similar protections.

62.   Defendant   JUDGE   KING   violated   all   the   foregoing guarantees in his handling of Ms. ELG.

63.   She   was   subjected   to   unusual   punishment   that   was cruel,   before   farcical   process,   because   she   upset   Defendant JUDGE KING in his unofficial and personal capacity.

64.   Though Defendant JUDGE KING acted under color of law,   his   actions   were   outside   the   bounds   of   his   authority, providing no just process at all.

65.   The   required   process,   had   there   been   an   actual   case or controversy, is clearly established.

66.   Ms. ELG was not accused of a crime.

67.     However, had an arrest been made, Defendant JUDGE KING and the 36th District Court would have lacked jurisdiction over her because it is the probate court that has jurisdiction over all cases involving juvenile delinquency unless and until other legal process occurred. MCL § 712A.2(a).

68.     Therefore, the only way that Ms. ELG could have been arrested and imprisoned is if she was legitimately found to be in criminal contempt of court.

69.     Arresting and jailing a person such as Ms. ELG, before a contempt hearing, as occurred in this instance, is illegal.

70.     A judge must go through a process to hold a person in contempt of court.

71.     To avoid any misunderstanding of the contempt process, the Michigan Supreme Court provides a bench book that is accessible to all judges and is complete with a flow chart to simplify the steps required to hold a person in contempt of court.

72.     Accordingly, no judge can credibly claim that they did not understand the rules; to work outside the law is not a mistake, it is an abuse of process.

73.    The first step in determining whether a person has committed a contemptuous act is to consider whether court was in session because Michigan law permits a court to punish "disorderly, contemptuous, or insolent behavior" during a court's "sitting," in its immediate view and presence, and "directly tending to interrupt its proceedings or impair the respect due its authority;" and, "any breach of the peace, noise, or disturbance directly tending to interrupt its proceedings." MCL §600.1701(a) & (b).

74.    The alleged contemptuous conduct, nodding off, occurred during a lecture to students on a fieldtrip.

75.    Defendant, JUDGE KING, was acting as teacher, not judge when Ms. ELG nodded off, and Court was not in session because there was no proceeding pending.[1]

76.    Furthermore, Ms. ELG was an adolescent student who did not engage the judge in his official capacity.

---

[1] It was found offensive to due process in *Zarcone v. Perry*, 572 F.2d 52 (2nd Cir. 1978) where a court, displeased with coffee delivered to the courtroom during a break in the court's session, ordered court officers to handcuff the vendor, bring him back to court, and detain him before conducting a fake inquisition accompanied with a berating and threats before  the fake trial concluded in release of the subject.

77.   Because the court was not in session and the defendant was not acting in his capacity as judge, Defendant JUDGE KING lacked all jurisdiction to use the contempt power.

78.   Even when proper to exercise, courts are cautioned to use the contempt power with the utmost restraint and only when contempt is clearly and unequivocally shown.

79.   Courts have held that making unjustified threats to use the contempt power is judicial misconduct.

80.   Thus, if court was in session and Defendant JUDGE KING had the jurisdiction to hold Ms. ELG in contempt, which he did not, he would have been required to seriously consider whether a spectator, with no connection to any matter pending before the court, nodding off, impeded the functioning of the court.

81.   A reasonable jurist would have recognized that it is not uncommon for people in the gallery (and even jurors) to occasionally nod off, in which case, an admonition might be appropriate.

82.   Upon information and belief, Defendant JUDGE KING is in fact aware of the foregoing possibility because every time

that his court returns to session, the defendant's court officer reminds people in the gallery that they should not eat, drink, talk, or sleep <u>while court is in session</u>; demonstrating his knowledge that nodding off during a break is not contempt.

83.    Upon further information and belief, Defendant JUDGE KING has told members of the press that even lawyers occasionally fall asleep in his courtroom and his real problem was not with Ms. ELG nodding off, but her attitude as exhibited by her body language.

84.    Nevertheless, had a spectator nodded off during a proceeding before Defendant JUDGE KING and he was so offended that he determined that the conduct was contemptuous, then he would have been required to decide if he had witnessed civil contempt or criminal contempt, understanding that civil contempt involves restoring the status quo while criminal contempt involves punishment for a prior act.

85.    Accordingly, if the contempt was civil in nature, Defendant JUDGE KING, would have lacked all authority to arrest and jail the contemptuous spectator as soon as the spectator awakened because the status quo would be restored.

86.   If the contemptuous conduct was criminal in nature and the judge intended to punish the spectator with incarceration for sleeping, a hearing with legal representation of the accused's choosing, would have been required to occur before the accused was arrested and jailed.

87.   Furthermore, and particularly if the judge felt disrespected, but chose to defer hearing the matter until the end of his case call instead of immediately and summarily conducting a contempt hearing, Defendant JUDGE KING would have been required to turn the matter over to a separate judge to consider the charges. *People v. Kurz,* 35 Mich. App. 643, 659; 192 N.W.2d 594 (1971), (citing *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499 (1971) and *Johnson v. Mississippi,* 403 U.S. 212, 214-216, 91 S.Ct 1778, 1779 (1971).)

88.   If the spectator was a minor and the hearing deferred, the matter would have likely been turned over to the juvenile court, but certainly to another judge because Defendant JUDGE KING would have lost jurisdiction.

89.   None of the required process was followed in this matter because Defendant JUDGE KING did not transform from teacher to judge.

90.   The process that Defendant JUDGE KING orchestrated for Ms. ELG, was applied first, in his capacity as teacher, before he expanded it to include producer when he broadcast the fake trial to entertain his internet audience.

91.   Defendant JUDGE KING, acting under color of law by representing that he had the authority as a state district judge to punish Ms. ELG when he did not, publicly punished and demeaned her by broadcasting his own rendition of "Scared Straight."

92.   The difference between Defendant JUDGE KING's version and the reality series is that the participants of the series consented to participate in the real "Scared Straight."

## **LACK OF IMMUNITY**

93.   Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the

preceding paragraphs of this Complaint, as if fully set forth herein.

94.   It is expected that Defendant JUDGE KING will claim that he is judicially immune from liability in this lawsuit.

95.   The doctrine of "judicial immunity" is often called "absolute."

96.   Rather than being truly absolute, the doctrine is self-limiting.

97.   Judges are only immune from liability for acts done within the scope of their judicial authority and over which they had jurisdiction.

98.   It is clearly established that judges are subject to liability when they act outside of their judicial capacity; for example, when they perform the administrative duties of hiring and firing.

99.   In that regard, it has been held that a judge is liable for the discriminatory termination of a court officer. *Forrester v. White*, 484 U.S. 219, 227, 229; 108 S.Ct. 538, 544--545 (1988), (recognizing that there is a difference between truly judicial acts for which immunity is appropriate, and acts that simply happen

22

to have been done by judges, holding that "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.")

100.   Judges perform many non-judicial acts.

101.   Judges may serve as adjunct legal professors teaching law students or they may serve as keynote speakers at public events.

102.   Upon information and belief, Defendant JUDGE KING has in fact served as an adjunct law professor.

103.   Certainly, the defendant would not claim that he possessed the authority to hold a law student in contempt of court for sleeping in class because, in addition to serving as a professor, he carried the title of judge.

104.   Nor would a judge believe that a heckler at a speaking event could be jailed by him for interrupting him.

105.   Precedent dictates that the location of the venue does not alter the function of the speaker; in other words, teaching the class in the courtroom does not transform the function of the person from teaching to adjudicating.

106.   Rather, it has been held "when it is beyond reasonable dispute that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears that no party has invoked the judicial machinery for any purpose at all, then, the judge's actions do not amount to 'judicial acts,' even if the acts occurred in the courthouse and a record of the bogus contempt proceeding was made by a stenographer. See *Harper v. Merckle*, 638 F.2d 848, 859 (5th Cir. 1981).

107.   In this matter, Ms. ELG was on a field trip to the court; the fifteen-year-old was not in the courtroom for legal process.

108.   Defendant JUDGE KING was acting as a lecturer and the court was not in session when Ms. ELG is alleged to have fallen asleep; moreover, it appears that the judge simply disliked her after judging her body language and assuming he knew her attitude.

109.   The perceived attitude offended Defendant JUDGE KING, and his personal objective was to punish her by scaring Ms. ELG straight.

110. Defendant JUDGE KING's decision to make an example of Ms. ELG by conducting a fake trial with real incarceration before an internet audience did not transform his role from teaching to adjudicating; therefore, he is not protected by judicial immunity.

111. Because Ms. ELG nodded off or displayed a bad attitude in class and not when court was in session, Defendant JUDGE KING lacked all jurisdiction to punish the conduct using the contempt process described above.

112. Therefore, Defendant JUDGE KING is liable for his actions in creating a publicly broadcast fake trial of a minor where he acted as producer, broadcaster, complaining witness, arresting officer, finder of fact, judge, and disciplinarian.

113. Defendants JOHN DOE and JANE ROE correction officers are likewise not entitled to quasi-judicial immunity or qualified immunity as they were private security guards who were not performing adjudicative functions in this matter, and because judicial immunity is inapplicable.

114. Furthermore, Defendants JOHN DOE and JANE ROE were willful participants in Defendant JUDGE KING's show trial

who were not acting pursuant to a valid court order when they arrested, handcuffed, and incarcerated Ms. ELG – before the fake process.

115.  Defendants JOHN DOE court officer and JANE ROE court officer are not entitled to governmental immunity under MCL §691.1407(2) & (3) because they are not officers or employees of a governmental agency, and they acted with actual malice by performing the ministerial acts of arresting, handcuffing, and incarcerating Ms. ELG.

## COUNT I – DEFENDANT JUDGE KENNETH KING – MALICIOUS PROSECUTION IN VIOLATION OF THE 4TH AMENDMENT

116. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

117. Defendant, JUDGE KING, instituted a malicious prosecution against the minor plaintiff, Ms. ELG, in violation of the Fourth Amendment to the United States Constitution that is actionable pursuant to 42 U.S.C. §1983.

118.   The constitutional tort of malicious prosecution was described in a historical sense by the United States Supreme Court in *Thompson v. Clark*, 596 U.S. 36; 43 142 S.Ct. 1332, 1338 (2022) (citations omitted): "the malicious prosecution tort generally allowed recovery against an individual who had initiated or caused the initiation of criminal proceedings despite having 'no good reason to believe' that criminal charges 'were justified by the facts and the law.'"

119.   Historically, "[t]he malicious prosecution tort protected against 'injury to the person, as connected with false imprisonment' and against 'a wrong to character or reputation.'" *Id.*

120.   Defendant JUDGE KING falsely imprisoned Ms. ELG and publicly impugned her character and damaged her reputation, in a non-adjudicatory role, without jurisdiction, in a fake trial, involving no legal process at all.

121.   Defendant JUDGE KING committed the constitutional tort of malicious prosecution in the following manners:

a. He acted under color of law by representing to Ms. ELG and the public that he had the authority to punish Ms. ELG when he did not,

b. He jailed her without any process to await a fake proceeding conducted without legal authority and without probable cause to bring a suit or charge,

c. His motivation for detaining her on the fictitious charge was malicious – to teach her a lesson and scare her straight because he felt disrespected,

d. After inflicting the punishment, he acquitted her of the phony charge and released her.

122.   Ms. ELG was injured as a direct and proximate result of Defendant JUDGE KING's abuse of power in orchestrating the arrest and conducting the fake trial that lacked any semblance of valid judicial process.

123.   Ms. ELG's injuries from being handcuffed, arrested, imprisoned, disrobed, and cast in a false light, include but are not necessarily limited to:

a. Severe emotional pain and suffering,

b. Mental anguish,

c. Severe emotional distress,

d. Fright and shock,

e. Denial of social pleasures, and

f. Humilitation and mortification.

124.   Ms. ELG is entitled to be compensated for her injuries in the form of monetary damages, that include but are not necessarily limited to:

a. Compensation for past, present and future pain and suffering, mental anguish, emotional distress, fright and shock, denial of social pleasures, and humiliation and mortification,

b. Compensation for medical expenses including psychological and psychiatric treatment; past, present, and future,

c. Exemplary damages,

d. Costs, interest, and attorney fees,

e. Expert witness fees, and,

f. Any other forms of costs or damages allowed at common law, or federal law, including 42 U.S.C. §1988, and

g. Compensation for any additional injuries or damages that become known throughout the course of this lawsuit.

125. Furthermore, the actions of Defendant JUDGE KING were extreme and outrageous and calculated for the purpose of inflicting fear and severe emotional distress, warranting an award of punitive damages pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff, LATOREYA TILL, as next friend of Ms. ELG, a minor, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant JUDGE KENNETH KING in an amount that exceeds Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, expert fees, and attorney fees.

## COUNT II -- DEFENDANT JUDGE KENNETH KING – UNLAWFUL ARREST AND INCARCERATION IN VIOLATION OF THE 4TH AMENDMENT

126. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

127.   The minor plaintiff, Ms. ELG, had a clearly established right to liberty protected by the Fourth Amendment to the United States Constitution to be free from an unlawful seizure, arrest, and incarceration.

128.   A plaintiff has a cause of action for violation of the right to be free from an unlawful seizure pursuant to 42 U.S.C. §1983.

129.   A seizure occurs when there is governmental termination of freedom of movement by means of physical force or show of authority.

130.   It is clearly established that an arrest without probable cause violates the Fourth Amendment.

131.   Ms. ELG committed no offense.

132.   There were no facts that would have led a reasonably prudent person to believe that Ms. ELG had committed an offense punishable by arrest, handcuffing, and incarceration when she nodded off or otherwise was perceived to have a bad attitude during a lecture that occurred on August 13, 2024.

133.   Nevertheless, Defendant JUDGE KING, appearing to Ms. ELG to be acting under color of law, violated her

31

constitutional rights when he unlawfully ordered Defendants JOHN and JANE ROE court officers to seize, arrest, handcuff, disrobe, and detain Ms. ELG, restricting her freedom of movement for hours, without probable cause to believe that an offense occurred.

134. Ms. ELG was unreasonably seized, arrested, handcuffed, ordered to disrobe, and held in a cell for an unreasonable amount of time without probable cause and before the fake proceeding occurred.

135. Ms. ELG was ultimately released without charges because there was no crime, there was no contempt, and there was no jurisdiction to bring a charge.

136. Instead, Ms. ELG had been an unknowing and unwitting participant in a fake trial.

137. Ms. ELG was injured as a direct and proximate result of Defendant JUDGE KING's abuse of power in orchestrating the arrest, detention, and fake trial that lacked any semblance of valid judicial process.

138.   Ms. ELG's injuries from being handcuffed, arrested, imprisoned, disrobed, and cast in a false light, include but are not necessarily limited to:

    a. Severe emotional pain and suffering,

    b. Mental anguish,

    c. Severe emotional distress,

    d. Fright and shock,

    e. Denial of social pleasures, and

    f.  Humilitation and mortification.

139.   Ms. ELG is entitled to be compensated for her injuries in the form of monetary damages, that include but are not necessarily limited to:

    a. Compensation for past, present and future pain and suffering, mental anguish, emotional distress, fright and shock, denial of social pleasures, and humiliation and mortification,

    b. Compensation for medical expenses including psychological and psychiatric treatment; past, present, and future,

    c. Exemplary damages,

d. Costs, interest, and attorney fees,

e. Expert witness fees, and,

f. Any other forms of costs or damages allowed at common law, or federal law, including 42 U.S.C. §1988, and

g. Compensation for any additional injuries or damages that become known throughout the course of this lawsuit.

140.   Furthermore, the actions of Defendant JUDGE KING were extreme and outrageous and calculated for the purpose of inflicting fear and severe emotional distress, warranting an award of punitive damages pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff, LATOREYA TILL, as next friend of Ms. ELG, a minor, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant JUDGE KENNETH KING in an amount that exceeds Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, expert fees, and attorney fees.

## COUNT III -- DEFENDANT JUDGE KENNETH KING –
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

141. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

142. Defendant, JUDGE KING's conduct in broadcasting a lecture live on the internet, berating Ms. ELG, exposing her personal information, characterizing her as a delinquent, arresting her, causing her to be handcuffed, causing her to disrobe, jailing her, fake trying her, and threatening her with extended juvenile detention in horrid conditions was extreme and outrageous.

143. The conduct was intentional or reckless and conducted for the purpose of teaching Ms. ELG a lesson, scaring her straight, and entertaining an audience.

144. Defendant, JUDGE KING, has directly and proximately caused Ms. ELG severe emotional distress and will cause her to sustain severe emotional distress and damages into the future.

145. Ms. ELG's injuries from being handcuffed, arrested, imprisoned, disrobed, berated, threatened, and cast in a false light, include but are not necessarily limited to:

    a. Severe emotional pain and suffering,

    b. Mental anguish,

    c. Severe emotional distress,

    d. Fright and shock,

    e. Denial of social pleasures, and

    f. Humilitation and mortification.

146. Ms. ELG is entitled to be compensated for her injuries in the form of monetary damages, that include but are not necessarily limited to:

    a. Compensation for past, present and future pain and suffering, mental anguish, emotional distress, fright and shock, denial of social pleasures, and humiliation and mortification,

    b. Compensation for medical expenses including psychological and psychiatric treatment; past, present, and future,

    c. Exemplary damages,

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

d. Costs, interest, and attorney fees,

e. Expert witness fees, and,

f. Any other forms of costs or damages allowed by the laws of the state of Michigan or at common law,

g. Compensation for any additional injuries or damages that become known throughout the course of this lawsuit.

WHEREFORE, Plaintiff, LATOREYA TILL, as next friend of Ms. ELG, a minor, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant JUDGE KENNETH KING in an amount that exceeds Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, expert fees, and attorney fees.

### COUNT IV-DEFENDANT JUDGE KENNETH KING – INVASION OF PRIVACY

147. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

148.   Defendant JUDGE KING intentionally and with actual malice disclosed to the public, via a live internet broadcast, personal information about minor Ms. KING and falsely attributed to her the characteristics of a juvenile delinquent, thereby placing her in a false light.

149.   The minor's name, age, high school and other personal information were private, and Ms. ELG, as a minor, had a right to keep that information confidential.

150.   Defendant JUDGE KING, without the consent of Ms. ELG or her mother, obtained the personal information from Ms. ELG by enlisting her in a fake trial that appeared to the minor to be a real court proceeding.

151.   Having heard, through the court's audio system, while she was detained for hours in the court's holding cell, actual defendants provide similar information to Defendant JUDGE KING, Ms. ELG believed that she was required to answer the defendant's questions and disclose her private information to him, and consequently, the public.

152.   Defendant, JUDGE KING, intentionally disclosed the private information to others by soliciting the information that

38

was not previously a matter of public record and was of no legitimate concern to the public, on a live internet feed.

153. Defendant JUDGE KING also acted in reckless disregard as to the falsity of his characterization of Ms. ELG as a delinquent and the false light in which Ms. ELG would be placed, because of his personal desire to show his own version of "Scared Straight" to a physical audience of Ms. ELG's peers and an internet audience of his viewers, his fans, his followers, and consequently, the entire public.

154. Furthermore, Defendant JUDGE KING demonstrated actual malice by admitting that he did not like Ms. ELG's attitude or body language and felt that she disrespected him when he was delivering his classroom lecture.

155. Defendant JUDGE KING's method of collection and dissemination of the minor's name and other personal information by making her an unwitting actor in a publicly broadcast fake trial would be objectionable to a reasonable person.

156. Ms. ELG was not an internet influencer and did not seek public attention; rather, public attention came to her as a

direct result of Defendant JUDGE KING's decision to broadcast his version of "Scared Straight," where he labelled her to be a disrespectful delinquent in need of mentoring.

157.  Ms. ELG was injured as a direct and proximate result of Defendant JUDGE KING's abuse of power in orchestrating the minor's arrest, detention, and fake trial that resulted in her private information being disclosed and which cast her in the false light of being a disrespectful juvenile delinquent.

158.  Ms. ELG's injuries from being handcuffed, arrested, imprisoned, disrobed, and cast in a false light in addition to the disclosure of her personal information, include but are not necessarily limited to:

     a. Severe emotional pain and suffering,

     b. Mental anguish,

     c. Severe emotional distress,

     d. Fright and shock,

     e. Denial of social pleasures, and

     f.  Humiliation and mortification.

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

159.   Ms. ELG is entitled to be compensated for her injuries in the form of monetary damages, that include but are not necessarily limited to:

    a. Compensation for past, present and future pain and suffering, mental anguish, emotional distress, fright and shock, denial of social pleasures, and humiliation and mortification,

    b. Compensation for medical expenses including psychological and psychiatric treatment; past, present, and future,

    c. Exemplary damages,

    d. Costs, interest, and attorney fees,

    e. Expert witness fees, and,

    f. Any other forms of costs or damages allowed by the laws of the state of Michigan or at common law,

    g. Compensation for any additional injuries or damages that become known throughout the course of this lawsuit.

WHEREFORE, Plaintiff, LATOREYA TILL, as next friend of Ms. ELG, a minor, respectfully requests that this Honorable

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

Court enter judgment in her favor and against Defendant JUDGE KENNETH KING in an amount that exceeds Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, expert fees, and attorney fees.

## COUNT V – DEFENDANT JUDGE KENNETH KING – FALSE ARREST AND IMPRISONMENT

160. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

161. Defendant JUDGE KING, with actual malice, falsely arrested Ms. ELG by intentionally ordering court officers to take her into custody, against her will, when there was no probable cause to believe that she committed a crime or offense, thereby subjecting her to arrest and the actual control of her body by Defendants JOHN DOE and JANE ROE court officers.

162. Defendant JUDGE KING is liable for false imprisonment because:

a. Ms. ELG was restrained, detained and confined by him, depriving her of her personal liberty and/or freedom of movement,

b. The imprisonment was against Ms. ELG's will,

c. The imprisonment was accomplished by actual physical force or an express or implied threat of force,

d. Defendant JUDGE KING intended to deprive Ms. ELG of her personal liberty or freedom of movement, and

e. The imprisonment was unlawful.

163.   Ms. ELG was injured as a direct and proximate result of the false arrest and false imprisonment ordered by Defendant JUDGE KING.

164.   Ms. ELG's injuries from being handcuffed, arrested, imprisoned, and disrobed, and unwillingly held through a fake trial involving threats of continued youth home detention, include but are not necessarily limited to:

a. Severe emotional pain and suffering,

b. Mental anguish,

c. Severe emotional distress,

d. Fright and shock,

e.  Denial of social pleasures, and

f.  Humiliation and mortification.

165.   Ms. ELG is entitled to be compensated for her injuries in the form of monetary damages, that include but are not necessarily limited to:

a.  Compensation for past, present and future pain and suffering, mental anguish, emotional distress, fright and shock, denial of social pleasures, and humiliation and mortification,

b.  Compensation for medical expenses including psychological and psychiatric treatment; past, present, and future,

c.  Exemplary damages,

d.  Costs, interest, and attorney fees,

e.  Expert witness fees, and,

f.  Any other forms of costs or damages allowed by the laws of the state of Michigan or at common law, and

g.  Compensation for any additional injuries or damages that become known throughout the course of this lawsuit.

WHEREFORE, Plaintiff, LATOREYA TILL, as next friend of Ms. ELG, a minor, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant JUDGE KENNETH KING in an amount that exceeds Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, expert fees, and attorney fees.

## COUNT VI – DEFENDANTS JOHN DOE & JANE ROE COURT OFFICERS – FOURTH AMENDMENT UNLAWFUL SEIZURE & DETENTION

166. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

167. The minor plaintiff, Ms. ELG, had a clearly established right to liberty protected by the Fourth Amendment to the United States Constitution to be free from an unlawful seizure, arrest, and incarceration.

168. A plaintiff has a cause of action for violation of the right to be free from an unlawful seizure pursuant to 42 U.S.C. §1983.

169. A seizure occurs when there is governmental termination of freedom of movement by means of physical force or show of authority.

170. It is clearly established that an arrest without probable cause violates the Fourth Amendment.

171. Ms. ELG committed no offense.

172. Nevertheless, Defendants JOHN DOE and JANE ROE court officers seized her, arrested her, detained her and instructed her to disrobe without probable cause, in response to an order that they knew was unlawful and was part of a plan to detain her for a fake trial exhibition.

173. There were no facts that would have led a reasonably prudent person to believe that Ms. ELG had committed an offense punishable by arrest, handcuffing, and incarceration when she nodded off during a lecture on August 13, 2024.

174. As employees of a private company, Defendants JOHN DOE and JANE ROE court officers are not protected by qualified immunity.

175. Defendants JOHN DOE and JANE ROE court officers represented that they had the legal authority to arrest when they

did not and represented that they were acting under color of law when they detained Ms. ELG, even though the proceedings were a farce.

176.   Defendant, JOHN DOE court officer, unlawfully seized Ms. ELG and directed her to a holding cell where her liberty and movement were restrained as she was locked inside.

177.   Defendant JANE ROE court officer thereafter handcuffed Ms. ELG and transported her to a different cell where she was instructed to disrobe and put on a jail jump suit.

178.   When Ms. ELG finished changing, Defendant JANE ROE court officer reapplied the handcuffs and took her back to the original holding cell and locked her inside.

179.   Ms. ELG was locked inside the holding cell for hours by Defendants JOHN DOE and JANE ROE court officers until Defendant JUDGE KING completed his case call.

180.   Defendants JOHN DOE and JANE ROE court officers thereafter reapplied handcuffs to Ms. ELG and brought her before the judge where they held her until Defendant JUDGE KING completed his fake trial and released her.

181.   Ms. ELG was injured as a direct and proximate result of the unlawful seizure and detention.

182.   Ms. ELG's injuries from being handcuffed, arrested, imprisoned, disrobed, and held for a fake trial, include but are not necessarily limited to:

      a. Severe emotional pain and suffering,

      b. Mental anguish,

      c. Severe emotional distress,

      d. Fright and shock,

      e. Denial of social pleasures, and

      f. Humilitation and mortification.

183.   Ms. ELG is entitled to be compensated for her injuries in the form of monetary damages, that include but are not necessarily limited to:

      a. Compensation for past, present and future pain and suffering, mental anguish, emotional distress, fright and shock, denial of social pleasures, and humiliation and mortification,

b. Compensation for medical expenses including psychological and psychiatric treatment; past, present, and future,

c. Exemplary damages,

d. Costs, interest, and attorney fees,

e. Expert witness fees, and,

f. Any other forms of costs or damages allowed at common law, or federal law, including 42 U.S.C. §1988, and

g. Compensation for any additional injuries or damages that become known throughout the course of this lawsuit.

184. Furthermore, the actions of Defendants JOHN DOE and JANE ROE court officers were extreme and outrageous and calculated for the purpose of inflicting fear and severe emotional distress, warranting an award of punitive damages pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff, LATOREYA TILL, as next friend of Ms. ELG, a minor, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants JOHN

DOE and JANE ROE court officers in an amount that exceeds Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, expert fees, and attorney fees.

## COUNT VII – DEFENDANTS JOHN DOE & JANE ROE COURT OFFICERS – FALSE ARREST & IMPRISONMENT

185. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

186. Defendants JOHN DOE and JANE ROE court officers falsely arrested Ms. ELG with actual malice and intent to restrict her liberty and movement, by taking her into custody, against her will, when there was no probable cause to believe that she committed a crime or offense and restrained her by handcuffing her and locking her into a jail cell.

187. She was falsely imprisoned against her will with actual force.

188. Ms. ELG was held for hours until Defendant JUDGE KING completed his fake trial and released her.

189.   Ms. ELG was injured as a direct and proximate result of the false arrest and false imprisonment committed by Defendants JOHN DOE and JANE ROE corrections officers.

190.   Ms. ELG's injuries from being handcuffed, arrested, imprisoned, and disrobed, and unwillingly held through a fake trial involving threats of continued youth home detention, include but are not necessarily limited to:

    a. Severe emotional pain and suffering,

    b. Mental anguish,

    c. Severe emotional distress,

    d. Fright and shock,

    e. Denial of social pleasures, and

    f. Humilitation and mortification.

191.   Ms. ELG is entitled to be compensated for her injuries in the form of monetary damages, that include but are not necessarily limited to:

    a. Compensation for past, present and future pain and suffering, mental anguish, emotional distress, fright and shock, denial of social pleasures, and humiliation and mortification,

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

b. Compensation for medical expenses including psychological and psychiatric treatment; past, present, and future,

c. Exemplary damages,

d. Costs, interest, and attorney fees,

e. Expert witness fees, and,

f. Any other forms of costs or damages allowed by the laws of the state of Michigan or at common law,

g. Compensation for any additional injuries or damages that become known throughout the course of this lawsuit.

WHEREFORE, Plaintiff, LATOREYA TILL, as next friend of Ms. ELG, a minor, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants JOHN DOE and JANE ROE court officers in an amount that exceeds Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, expert fees, and attorney fees.

## COUNT VIII -- DEFENDANT UNIVERSAL – VICARIOUS LIABILITY FOR STATE LAW TORTS

192. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

193. Defendant UNIVERSAL is vicariously liable for the conduct of Defendants JOHN DOE court officer and JANE ROE court officer because their acts of arresting, handcuffing, and detaining Ms. ELG were within the scope of their employment as security guards and were undertaken to further their employer's interests.

194. To the extent that Defendant UNIVERSAL contends that the actions alleged were outside the scope of their employment, the conduct was foreseeable, and Defendant UNIVERSAL remains liable under principles of respondeat superior.

WHEREFORE, Plaintiff, LATOREYA TILL, as next friend of Ms. ELG, a minor, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants

UNIVERSAL PROTECTION SERVICES, ALLIED UNIVERSAL SECURITY SERVICES and/or ALLIED UNIVERSAL SECURITY SERVICES, LLC, in an amount that exceeds Seventy-Five Thousand Dollars (>$75,000.00), exclusive of costs, interest, expert fees, and attorney fees.

Respectfully submitted,

*/s/ Gary N. Felty, Jr.*

GARY N. FELTY, JR. (P55554)
JAMES J. HARRINGTON (P65351)
Fieger, Fieger, Kenney &
Harrington, P.C.
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555
g.felty@fiegerlaw.com

Dated: 8/21/2024

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELG, a minor by Parent and                    Case No.
Next Friend LATOREYA TILL,                     Hon.

        Plaintiff,

v.

JUDGE KENNETH KING,
individually; UNIVERSAL
PROTECTION SERVICES
d/b/a ALLIED UNIVERSAL
SECURITY SERVICES
and/or ALLIED UNIVERSAL
SECURITY SERVICES, LLC;
JOHN DOE COURT
OFFICER, individually; and
JANE ROE COURT OFFICER
individually,

        Defendants.

---

**FIEGER, FIEGER, KENNEY &
HARRINGTON, P.C.**
JAMES J. HARRINGTON (P65351)
GARY N. FELTY, JR. (P55554)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555/F: (248) 355-3148
j.harrington@fiegerlaw.com
g.felty@fiegerlaw.com

---

## JURY DEMAND

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

Plaintiff, ELG, a minor by Parent and Next Friend LATOREYA TILL, through her attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., hereby demands a trial by jury.

Respectfully submitted,

*/s/ Gary N. Felty, Jr.*

GARY N. FELTY, JR. (P55554)
JAMES J. HARRINGTON (P65351)
Fieger, Fieger, Kenney &
Harrington, P.C.
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555
g.felty@fiegerlaw.com

Dated: 8/21/2024

2