UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELG, a minor by Parent and
Next Friend LATOREYA TILL,

Case No. 2:24-cv-12195
Hon. David M. Lawson

Plaintiff,

v.

JUDGE KENNETH KING,
 individually; UNIVERSAL
PROTECTION SERVICES
 d/b/a ALLIED UNIVERSAL
 SECURITY SERVICES
and/or ALLIED UNIVERSAL
SECURITY SERVICES, LLC;
JOHN DOE COURT
 OFFICER, individually; and
JANE ROE COURT OFFICER
 individually,

**PLAINTIFF'S RESPONSE TO
DEFENDANTS ALLIED
UNIVERSAL SECURITY
SERVICES, LLC and
JANE ROE COURT
OFFICER'S MOTION TO
DISMISS ELG'S COMPLAINT
PURSUANT TO FED. R.
CIV. P. 12(b)(6)**

Defendants.

| | |
|---|---|
| **FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.** <br> JAMES J. HARRINGTON (P65351) <br> GARY N. FELTY, JR. (P55554) <br> Attorneys for Plaintiff <br> 19390 West Ten Mile Road <br> Southfield, Michigan 48075 <br> (248) 355-5555/F: (248) 355-3148 <br> j.harrington@fiegerlaw.com <br> g.felty@fiegerlaw.com | VALERIE HENNING MOCK (P55572) <br> **MATTHEW J. HIGH (P82783)** <br> **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP** <br> Attorneys for Defendant Universal Protection Service, LLC d/b/a Allied Universal Security Services <br> 17197 N Laurel Park Drive, Ste 201 <br> Livonia, MI 48152 <br> (313) 327-3100 / (313 327-3101 (F) <br> valerie.mock@wilsonelser.com <br> matthew.high@wilsonelser.com |

Plaintiff, ELG, a minor by Parent and Next Friend, LATOREYA TILL, through her attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., requests that this Honorable Court Deny Defendants' Motion to Dismiss ELG's Complaint for the reasons stated in the accompanying brief.

Respectfully submitted,

*/s/ Gary N. Felty, Jr.*

JAMES J. HARRINGTON (P65351)
GARY N. FELTY, JR. (P55554)
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555
g.felty@fiegerlaw.com

Dated: 10/8/2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELG, a minor by Parent and
Next Friend LATOREYA TILL,

    Plaintiff,

v.

JUDGE KENNETH KING,
 individually; UNIVERSAL
PROTECTION SERVICES
 d/b/a ALLIED UNIVERSAL
 SECURITY SERVICES
and/or ALLIED UNIVERSAL
SECURITY SERVICES, LLC;
JOHN DOE COURT
 OFFICER, individually; and
JANE ROE COURT OFFICER
 individually,

    Defendants.

Case No. 2:24-cv-12195
Hon. David M. Lawson

**<u>BRIEF IN RESPONSE TO
DEFENDANTS ALLIED
UNIVERSAL SECURITY
SERVICES, LLC and
JANE ROE COURT
OFFICER'S MOTION TO
DISMISS ELG'S COMPLAINT
PURSUANT TO FED. R.
CIV. P. 12(b)(6)</u>**

| **FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.** | VALERIE HENNING MOCK (P55572) |
|---|---|
| JAMES J. HARRINGTON (P65351) | **MATTHEW J. HIGH (P82783)** |
| GARY N. FELTY, JR. (P55554) | **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP** |
| Attorneys for Plaintiff | Attorneys for Defendant Universal |
| 19390 West Ten Mile Road | Protection Service, LLC d/b/a Allied |
| Southfield, Michigan 48075 | Universal Security Services |
| (248) 355-5555/F: (248) 355-3148 | 17197 N Laurel Park Drive, Ste 201 |
| j.harrington@fiegerlaw.com | Livonia, MI 48152 |
| g.felty@fiegerlaw.com | (313) 327-3100 / (313 327-3101 (F) |
| | valerie.mock@wilsonelser.com |
| | matthew.high@wilsonelser.com |

## <u>CONCISE STATEMENT OF ISSUE PRESENTED</u>

Does Plaintiff's Complaint plead a claim that overcomes the defense of quasi-judicial immunity where the defense has the burden of proving entitlement to immunity and the defense has cited no authority for the proposition that quasi-judicial immunity extends to employees of private, for-profit companies?

Plaintiff answers: YES.

Defendant answers: NO.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE DENIAL OF DEFENDANTS' MOTION</u>

Under Rule 12(b)(6), a plaintiff's complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)

"The law presumes that qualified immunity - rather than absolute immunity – applies and "the official seeking absolute immunity bears the burden of showing that [absolute] immunity is justified for the function in question." *Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678, 690-691 (6th Cir. 2020).

Private, for-profit corporations are not entitled to quasi-judicial immunity. *Rodriguez v. Providence Community Corrections, Inc.*, 191 F.Supp.3d 758, 767-769 (M.D. Tenn. 2016).

Neither qualified immunity nor Michigan statutory immunity extend to private security officers. See *Richardson v. McKnight*, 521 U.S. 399, 412-413, 117 S.Ct. 2100, 2108, 138 L.Ed.2d 540 (1997), (private corrections officers not shielded with qualified immunity); *Roberts v. City of Pontiac*, 176 Mich. App. 572, 578, 440 N.W.2d 55, 57 (1989), (no reason to extend the

ii

protection of governmental immunity to a private entity because it

contracts with the government).

## I.  STATEMENT OF FACTS

### A.  INTRODUCTION

Plaintiff has alleged two counts against JANE ROE COURT OFFICER: Count IV – unlawful seizure in violation of the Fourth Amendment to the United States Constitution, and Count V – False Arrest and Imprisonment. Both counts are premised upon an unlawful arrest.

Plaintiff has pleaded facts that allege that the unlawful arrest and detention were punishment by Defendant KING for actions that occurred during a non-judicial proceeding followed by a fake trial. Consequently, any order of the judge, rather than being prima facie valid, was unlawful.

Plaintiff has also properly alleged that Defendant ALLIED UNIVERSAL is vicariously liable for the actions of its agent or employee, JANE DOE COURT OFFICER relative to the state law claim.

### B.  FACTS PLEADED

Plaintiff has alleged both, that Defendant Judge King's actions in causing ELG to be arrested, handcuffed, disrobed and detained were extra-judicial, having occurred during a lecture when court was not in session, and that Defendant King lacked jurisdiction to do what he did. These conclusions are supported by factual allegations.

1

Extra-judicial. Plaintiff has alleged that ELG was invited to the 36th District Court for a field trip to hear a lecture that was delivered by Defendant King. (Plaintiff's Complaint, ¶ 18-20, ECF No. 1, PageID.7). Plaintiff has alleged that the court was in recess when the lecture, broadcast through social media, occurred, and that the judge had left the bench, surrendering it to a student, who the judge had donned with his robe, when the lecture occurred. (Plaintiff's Complaint, ¶ 27-30, ECF No. 1, PageID.8).

The minor, ELG, fell asleep during the lecture. Plaintiff alleged that this offended Judge King, so he decided that he would punish the minor. (Plaintiff's Complaint, ¶109, ECF No. 1, PageID.24). Defendant JANE ROE assisted with the judge's plan.

Lack of jurisdiction. Plaintiff has alleged that Judge King had no jurisdiction to punish the minor for falling asleep during a lecture. Plaintiff has alleged that Defendant King's plan was to orchestrate his own version of "Scared Straight" that he broadcast to social media. (Plaintiff's Complaint, ¶36, ECF No. 1, PageID.9). Plaintiff has further alleged that the judge planned a fake trial as evidenced by the fact that there was no case number, there is no court record, there was no case or controversy, that

2

ELG did not engage Judge King in his official capacity, and the judge was personally motivated to teach the minor a lesson when he knew that he lacked the authority to punish the child (Plaintiff's Complaint, ¶43, 44-45, 51-53, 76, ECF No.1, PageID.11-13, 17). Furthermore, all material actions occurred when the court was not in session.

 <u>Unlawful order</u>. Plaintiff did not allege that Judge King gave Defendant JANE ROE a direct order, much less a facially valid order, as claimed by defendants. Plaintiff does not dispute using the word "order" in introductory paragraphs and in reciting the elements of her claims but the term was not used to describe a direct, facially valid order of the court. Rather, Plaintiff alleged that Defendants JOHN DOE and JANE ROE Court Officers were willful participants in the show trial and were not acting pursuant to a valid court order when ELG was arrested, handcuffed, and detained; but rather, they acted with actual malice. (Plaintiff's Complaint, ¶115 ECF No.1, PageID.26).

 Plaintiff alleged that the arrest and detention were part of Judge King's plan. (Plaintiff's Complaint, ¶36, ECF No. 1, PageID.9). Plaintiff alleged that when ECF returned to the lecture, after being told to go out and get a drink of water by the judge, she was greeted by Defendant JOHN

DOE court officer who derided her, accused her of disrespecting the judge, and directed her to a detention cell. (Plaintiff's Complaint, ECF No. 1, ¶37-40, PageID.10). Plaintiff did not allege that the judge gave this defendant a direct, facially valid order. Rather, it can be inferred that the judge advised the court officer that he intended to scare ELG straight with mock proceedings and told the officer how he could participate.

Approximately ten minutes later, it is alleged that Defendant JANE ROE put handcuffs on ELG, moved her to another cell, and told ELG to take off her street clothes and put on a jumpsuit. (Plaintiff's Complaint, ¶41-42, ECF No. 1, PageID.10). Plaintiff did not allege that Defendant JANE ROE was responding to a direct, facially valid order of the court. Rather, it can be inferred that Defendant DOE told her what was going on and how she could participate.

Plaintiff further alleged, "[e]videncing that Defendant JANE ROE and Defendant JOHN DOE court officers knew that Ms. ELG was an unwilling participant in a farce, she was permitted to put the jumpsuit over her clothing before being handcuffed and transported back to the original holding cell, where she was held captive for hours, before being re-cuffed and brought into the courtroom after the close of the day's proceedings,

4

where a fake trial was convened." (Plaintiff's Complaint, ¶43, ECF No. 1, PageID.11).

Rather than being conclusory, Plaintiff's Complaint is as factually specific as it can be given that the minor was fifteen years old on the date of the occurrence, the minor was naïve to the judicial process, and the defendants and/or the 36th District Court have control of all physical evidence. The physical evidence is believed to include a full YouTube video of the events that has not been produced and has in fact been pulled from the public record.

Plaintiff's obligation at the time of filing was to plead plausible facts that must be accepted as true, with all reasonable inferences being drawn in her favor. Plaintiff has done at least what was required.

## II. <u>ARGUMENT</u>

### A.   <u>Standard of Review</u>

The defendants' motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(6). This court has previously thoroughly stated the standard of review.

> "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken

as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008). As the Sixth Circuit explained,

> [t]o survive a motion to dismiss, [a plaintiff] must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility requires showing more than the "sheer possibility" of relief but less than a "probab[le]" entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). Stated differently, under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court, but conclusions ought not be accepted unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

*Fareed v. G4S Secure Solutions (USA) Inc.*, 942 F.Supp.2d 738, 741 (E.D. Mich. 2013).

6

### B. <u>Immunity does not apply</u>

Defendants' sole argument is that plaintiff fails to state a claim because they allege that they were following a facially valid court order and are therefore protected by absolute quasi-judicial immunity. However, when immunity is available, "[t]he law presumes that qualified immunity - rather than absolute immunity – applies and "the official seeking absolute immunity bears the burden of showing that [absolute] immunity is justified for the function in question." *Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678, 690-691 (6th Cir. 2020).

Plaintiff submits that no immunity applies, as alleged in her Complaint at ¶113, 115. (ECF No. 1, PageID.25-56). Private, for-profit corporations are not entitled to quasi-judicial immunity. *Rodriguez v. Providence Community Corrections, Inc.*, 191 F.Supp.3d 758, 767-769 (M.D. Tenn. 2016). Defendants have cited no law that supports their claim of entitlement to absolute quasi-judicial immunity.

Furthermore, neither qualified immunity nor Michigan statutory immunity extend to private security officers. See *Richardson v. McKnight*, 521 U.S. 399, 412-413, 117 S.Ct. 2100, 2108, 138 L.Ed.2d 540 (1997), (private corrections officers not shielded with qualified immunity); *Roberts v. City of*

*Pontiac*, 176 Mich. App. 572, 578, 440 N.W.2d 55, 57 (1989), (no reason to extend the protection of governmental immunity to a private entity because it contracts with the government). Plaintiff requests that defendants' Motion be denied because they are not entitled to immunity.

### C.   <u>Quasi-Judicial Immunity</u>

Quasi-judicial immunity derives from "absolute judicial immunity." Plaintiff is unaware of any case where quasi-judicial immunity has been extended to a private, for-profit corporation, and defendants have not cited one.

"Quasi-judicial immunity extends to those [governmental] persons performing tasks so integral or intertwined with the judicial process that <u>these persons are considered an arm of the judicial officer who is immune</u>." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).  Consequently, courts have said, "[i]t does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings." *Id.* at 848. Conversely, it would be illogical to conclude that a lower-level private security guard would enjoy absolute quasi-judicial immunity if the judge,

8

the body to which the arm is attached, is not absolutely immune from liability.

### D. <u>Judicial immunity</u>

Most discussions of quasi-judicial immunity begin with an explanation of judicial immunity, the concept from which it is derived. "Judicial immunity" has been characterized, since its recognition in modern common law in the case of *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1871), as "absolute immunity" from civil liability for the actions of judges undertaken within their judicial authority.

The Court thereafter held in *Stump v. Sparkman*, 435 U.S. 349, 355-356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), that judicial immunity applies to actions taken by judges within their jurisdiction. The *Stump* court, citing *Bradley*, *supra*, 13 Wall. at 347, said that it is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id*.

In *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538 (1988), the Court considered the function of the judge in deciding whether judicial immunity

9

would apply. The standard was set in *Mireles v. Waco*, 502 U.S. 9, 112 S.Ct.

286, 116 L.Ed.2d 9 (1991):

> Our cases make clear that the immunity is overcome in only
> two sets of circumstances. First, a judge is not immune from
> liability for nonjudicial actions, i.e., actions not taken in the
> judge's judicial capacity. *** Second, a judge is not immune for
> actions, though judicial in nature, taken in the complete
> absence of all jurisdiction. ***

*Mireles, supra*, 502 U.S. at 11-12, citations omitted.

A functional approach has been applied to the first prong of the test

in *Forrester*. The same functional test has been applied to claims of quasi-

judicial immunity. *Bush, supra*, 38 F.3d 842.

In considering what is a judicial function, the Court noted that

"[m]ost judicial mistakes or wrongs are open to correction through

ordinary mechanisms of review [appeal], which are largely free of the

harmful side-effects inevitably associated with exposing judges to personal

liability." *Forrester, supra*, 484 U.S. at 227. Applying immunity to truly

judicial functions, acknowledges that a judge's decision may "disappoint

some of the most intense and ungovernable desires that a person may

have," but frees the judge to make the decision without timidity; whereas

the absence of immunity for judicial decision-making and exposing the

10

judge to civil liability for a judicial decision "would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Id.* at 226-227.

The *Forrester* court, after previously noting that it was not writing on a clean slate when applying the doctrine of judicial immunity, said, "[w]hen applied to the paradigmatic judicial acts involved in resolving disputes between <u>parties who have invoked the jurisdiction of a court</u>, the doctrine of absolute judicial immunity has not been particularly controversial." *Id.* at 227, emphasis added.

> Difficulties have arisen primarily in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and <u>acts that simply happen to have been done by judges</u>. Here, as in other contexts, immunity is defined by the *functions* it protects and serves, not by the person to whom it attaches. [*Id.,* underscore added.]

This functional approach was applied to the "absolute immunity" of prosecutors in *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). In that case, the Court held that conspiring with police investigators to manufacture false evidence before charges were brought was not shielded with absolute immunity because the prosecutor was in no

different position than the police investigators who enjoyed only qualified

immunity.

> When a prosecutor performs the investigative functions
> normally performed by a detective or police officer, it is 'neither
> appropriate nor justifiable that, for the same act, immunity
> should protect the one and not the other.' *** Thus, if a
> prosecutor plans and executes a raid on a suspected weapons
> cache, he 'has no greater claim to complete immunity than
> activities of police officers allegedly acting under his direction.'
>
> ***
>
> A prosecutor neither is, nor should consider himself to be, an
> advocate [protected by absolute immunity] before he has
> probable cause to have anyone arrested. [*Buckley, supra*, 509
> U.S. at 273-274.]

The Court similarly found that the same prosecutor was not immune from

civil liability for comments made to the media because media comments

"have no functional tie to the judicial process just because they are made by

a prosecutor. *Id.* at 277.  In both instances, investigation and comments, the

focus of the court was the type of action undertaken by the person

asserting immunity and the timing of the action. Investigative activities

before charging the defendant were not protected by absolute immunity,

though investigative activities completed after the prosecution commenced

likely would be protected. Similarly, though prosecutorial speech would be

12

protected during judicial proceedings, statements made outside of judicial proceedings likely would not be protected.

The Fifth Circuit addressed "judicial acts" in the case of *Harper v. Merckle*, 638 F.2d 848, 859 (1981). In a case involving the improper use of contempt proceedings:

> we hold only that when it is beyond reasonable dispute that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears certain that no party has invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to "judicial acts."

### E.   <u>Application of the Functional Approach</u>

Plaintiff alleges that the defendants were complicit in orchestrating a production of "Scared Straight" as punishment for ELG's actions and/or attitude during an extra-judicial lecture. ELG was not a party to litigation and did not engage the judge or his officers in any judicial capacity. See *Mirales, supra*, 502 U.S. at 12. She was a guest at a speaking engagement, where the lecturer happened to be the judge.

Plaintiff has pled that conducting mock proceedings, without a case number, without a court record, and without appellate rights is extra-judicial. Plaintiff has further pled that the actions of arresting ELG, jailing

and holding her for a mock proceeding were personally motivated for the purpose of punishment, or teaching ELG a lesson.

Furthermore, Defendant JANE ROE is alleged to have handcuffed and detained ELG together with ordering her to disrobe and wear a jail jumpsuit in furtherance of the mock proceeding. These actions, if true, constitute a wrongful arrest.

As an initial matter, the act of arresting a person is not a judicial function. In applying the functional approach, the Eighth Circuit, citing the Ninth Circuit, concluded that, though judges may order an officer or bailiff to escort an unruly litigant to jail; the arrest and detention of an individual is not a judicial act. See *Rockett v. Eighamy*, 71 F.4th 665, 671-672 (8th Cir. 2023), (judges do not do double duty as jailers), citing *Gregory v. Thompson*, 500 F.2d 59, 64-65 (9th Cir. 1974), (judge who physically removed an individual from the courtroom could not receive judicial immunity for the assault because liability for assault and battery would not hinder the purpose of immunity – to promote principled and fearless decision-making). Logically speaking, if a judge is not judicially immune from making an unlawful arrest, then the judge's right arm should not be

14

immune when making such an arrest either, particularly where the arrest was in furtherance of a mock proceeding.

Plaintiff has plead plausible claims and has demonstrated that these defendants are not entitled to quasi-judicial immunity based upon law and function. Nevertheless, plaintiff must address defendants' claim that they are entitled to quasi-judicial immunity because they allegedly arrested ELG pursuant to a facially valid order.

**F.** **Plaintiff has not alleged that Defend Roe was following a direct and facially valid order of the judge, but rather, has alleged that she was complicit in an unlawful arrest**

Plaintiff is aware that courts have extended immunity to non-judicial personnel for carrying out valid court orders and that courts have called the immunity "quasi-judicial immunity." The label is erroneous when applied to arrests because arrests are an executive function as described above.  ather than creating an immunity from suit, "an arrest based on a facially valid warrant approved by a magistrate provides a complete defense" to a claim of false arrest. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).

Though the *Bush* court held that enforcing or executing a court order is intrinsically associated with a judicial proceeding, it relied upon *Foster v.*

*Walsh*, 864 F.2d 416 (6th Cir. 1986) in reaching its holding. *Foster* applied quasi-judicial immunity to the issuance of a bench warrant by a clerk at the direction of a judge and not the act of arresting and detaining an individual. *Id.* at 417-418. Similarly, in the *Bush* case, the act at issue was not the actual detention of a juvenile but the type of placement of the juvenile selected by a probate administrator based upon the facially valid yet erroneous order of a probate referee. *Bush, supra*, 38 F.3d at 844-845, 847.

As applied to this case, whether the allegation that the defendants were following a court order raises a defense, or rises to the level of creating immunity, plaintiff has pled facts to support her claim that any such order was unlawful. It has been held that to prove a claim of false arrest, where the arresting officer relied upon an arrest warrant signed by a judge that was sworn to by the defendant officer, the plaintiff must prove that the defendant officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statement or omissions that create[d] a falsehood" and "such statements or omissions [we]re material, or necessary to the finding of probable cause." *Sykes, supra*, 625 F.3d 294 (2010).

16

The essence of a facially valid order then, is an order based upon probable cause. In this matter plaintiff has alleged that there was no probable cause to believe that ELG committed a crime or offense punishable by arrest and detention. Plaintiff has alleged that the entire proceeding was fake and that these defendants were willful participants.

Plaintiff's burden is to state a plausible claim. Plaintiff may plead in the alternative in one count or in separate counts, and the pleading is sufficient if any one of them is sufficient. Fed. R. Civ. P. 8(d)(2). Plaintiff has sustained her burden.

It is plausible that Defendant King became angry when ELG fell asleep during a lecture and/or that he did not like her attitude. Despite knowing that he lacked jurisdiction to legally punish her, he decided to turn a legal forum into a social media studio and embarrass the minor by broadcasting, as he said, his version of "Scared Straight." To accomplish this, he would require accomplices to make his fake process look real. He would require the court officers to make a phony arrest of ELG, to make ELG change into what she would believe to be prison garb, and to make her feel like she was in prison, before conducting a mock trial fully equipped with fake defense counsel.

17

It is plausible that Judge King told ELG to leave the lecture hall so that he could tell Defendant JOHN DOE court officer his plan and to assign him his role of making the arrest. Defendant JOHN DOE officer, knowing the plan, went along with it and arrested ELG. However, he could not take a young lady to disrobe; therefore, he enlisted Defendant JANE ROE for assistance. Defendant JANE ROE agreed to participate. It is plausible to believe that a genuine arrestee drawn from the court would either remain in street clothing until processed or would be required to remove all clothing before putting on a jumpsuit. It is implausible to believe that a genuine arrestee would be permitted to put a jumpsuit over street clothing after being instructed to remove their apparel and change into a jail uniform.

Plaintiff has pleaded facts to establish that any order given by Defendant King was unlawful and that the defendant court officers knew they were not following a valid legal mandate because the entire process was fake. The defense has offered no evidence that a facially valid order was given to Defendant JANE ROE.

The defense has offered no evidence that Defendant King's actions were undertaken in his capacity as a judge. The defense has offered no

18

evidence that actual contempt proceedings were undertaken or that Defendant King believed that he was acting within his judicial authority. The defense has offered no evidence in support of judicial immunity from which quasi-judicial immunity would be derived. Accordingly, defendants' motion should be denied.

### G.   <u>Vicarious Liability Claim</u>

Plaintiff has stated a valid claim of vicarious liability. Plaintiff does not contest that claims of vicarious liability are derivative and that if the principal claim fails, so do does the claim of vicarious liability. However, plaintiff has stated valid claims.

Wherefore, Plaintiff, ELG, a minor by Parent and Next Friend, LATOREYA TILL, through her attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., requests that this Honorable Court Deny Defendants' Motion to Dismiss ELG's Complain for the reasons stated in the accompanying brief.

Respectfully submitted,

*/s/ Gary N. Felty, Jr.*
JAMES J. HARRINGTON (P65351)
GARY N. FELTY, JR. (P55554)
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555
g.felty@fiegerlaw.com

Dated: 10/8/2024

---

**CERTIFICATE OF SERVICE**

    I hereby certify that on 10/21/24, I served this foregoing instrument to all counsel of record and with the Clerk of the Court using the ECF system.
    I further hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: N/A

s/Gary N. Felty, Jr.
FIEGER, FIEGER, KENNEY
& HARRINGTON, P.C.
19390 West Ten Mile Road
Southfield, MI 48075
248-355-5555
g.felty@fiegerlaw.com

20