UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELG, a minor by Parent and
Next Friend LATOREYA TILL,

Case No. 2:24-cv-12195
Hon. David M. Lawson

Plaintiff,

v.

JUDGE KENNETH KING,
 individually; UNIVERSAL
PROTECTION SERVICES
 d/b/a ALLIED UNIVERSAL
 SECURITY SERVICES
and/or ALLIED UNIVERSAL
SECURITY SERVICES, LLC;
JOHN DOE COURT
 OFFICER, individually; and
JANE ROE COURT OFFICER
 individually,

**PLAINTIFF'S RESPONSE TO
DEFENDANT KING'S
MOTION TO DISMISS
PURSUANT TO FED. R.
CIV. P. 12(b)(6) IN LIEU OF
ANSWER**

Defendants.

| **FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.** | **THE PERKINS LAW GROUP** |
|---|---|
| JAMES J. HARRINGTON (P65351) | TODD RUSSELL PERKINS (P55623) |
| GARY N. FELTY, JR. (P55554) | Attorney for Defendant |
| Attorneys for Plaintiff | 615 Griswold, Suite 400 |
| 19390 West Ten Mile Road | Detroit, Michigan 48226 |
| Southfield, Michigan 48075 | (313) 964-1702 |
| (248) 355-5555/F: (248) 355-3148 | tperkins@perkinslawgroup.net |
| j.harrington@fiegerlaw.com | |
| g.felty@fiegerlaw.com | |

VALERIE HENNING MOCK (P55572)
**MATTHEW J. HIGH (P82783)**
**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER, LLP**
Attorneys for Defendant Universal
Protection Service, LLC d/b/a Allied
Universal Security Services
17197 N Laurel Park Drive, Ste 201
Livonia, MI 48152
(313) 327-3100 / (313 327-3101 (F)
valerie.mock@wilsonelser.com
matthew.high@wilsonelser.com

Plaintiff, ELG, a minor, by Parent and Next Friend, LATOREYA

TILL, through her attorneys, FIEGER, FIEGER, KENNEY &

HARRINGTON, P.C., requests that this Honorable Court Deny Defendant

KING'S Motion to Dismiss ELG's Complaint for the reasons stated in the

accompanying brief.

Respectfully submitted,

*/s/ Gary N. Felty, Jr.*

JAMES J. HARRINGTON (P65351)
GARY N. FELTY, JR. (P55554)
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555
g.felty@fiegerlaw.com

Dated: 11/11/2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELG, a minor by Parent and
Next Friend LATOREYA TILL,

Case No. 2:24-cv-12195
Hon. David M. Lawson

Plaintiff,

v.

JUDGE KENNETH KING,
 individually; UNIVERSAL
PROTECTION SERVICES
 d/b/a ALLIED UNIVERSAL
 SECURITY SERVICES
and/or ALLIED UNIVERSAL
SECURITY SERVICES, LLC;
JOHN DOE COURT
 OFFICER, individually; and
JANE ROE COURT OFFICER
 individually,

**PLAINTIFF'S BRIEF IN RESPONSE
TO DEFENDANT KING'S
MOTION TO DISMISS
PURSUANT TO FED. R.
CIV. P. 12(b)(6) IN LIEU OF
ANSWER**

Defendants.

| **FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.** | **THE PERKINS LAW GROUP** |
|---|---|
| JAMES J. HARRINGTON (P65351) | TODD RUSSELL PERKINS (P55623) |
| GARY N. FELTY, JR. (P55554) | Attorney for Defendant |
| Attorneys for Plaintiff | 615 Griswold, Suite 400 |
| 19390 West Ten Mile Road | Detroit, Michigan 48226 |
| Southfield, Michigan 48075 | (313) 964-1702 |
| (248) 355-5555/F: (248) 355-3148 | tperkins@perkinslawgroup.net |
| j.harrington@fiegerlaw.com | |
| g.felty@fiegerlaw.com | |

VALERIE HENNING MOCK (P55572)
**MATTHEW J. HIGH (P82783)**
**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER, LLP**
Attorneys for Defendant Universal
Protection Service, LLC d/b/a Allied
Universal Security Services
17197 N Laurel Park Drive, Ste 201
Livonia, MI 48152
(313) 327-3100 / (313 327-3101 (F)
valerie.mock@wilsonelser.com
matthew.high@wilsonelser.com

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT KING'S MOTION
TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) IN LIEU OF ANSWER**

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES......................................................................ii

CONCISE STATEMENT OF ISSUE PRESENTED ......................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE

DENIAL OF DEFENDANTS' MOTION ...........................................................v

I.     STATEMENT OF FACTS......................................................................1

   A.   INTRODUCTION ..........................................................................1

   B.   FACTUAL DEVELOPMENT ....................................................2

II.    ARGUMENT........................................................................................9

   A.   STANDARD OF REVIEW ..........................................................9

   B.   PLAINTIFF IS NOT REQUIRED TO PLEAD THE ABSENCE OF

ABSOLUTE IMMUNITY. ..............................................................10

   C.   PLAINTIFF HAS SUED DEFENDANT KING IN HIS INDIVIDUAL

CAPACITY...................................................................................12

   D.   HISTORY OF JUDICIAL IMMUNITY....................................14

   E.   APPLICATION.............................................................................21

## INDEX OF AUTHORITIES

**Cases**

*Archie v. Lanier*, 95 F.3d 438 (6th Cir. 1996). .............................................. v, 10, 11

*Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871) ............................................ 14, 16

*Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)

..................................................................................... 19, 20, 22

*Burns v. Reed*, 500 U.S. 478, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991) ............10

*Floyd v. Barker*, 77 Eng. Rep. 1305 (Star Chamber 1607) ..................................14

*Forrester v. White*, 484 U.S. 219, 108 S. Ct. 538 (1988)............................ 17, 18, 19

*Franklin American Mtg. Co. v. University Nat'l Bank*, 910 F.3d 270 (6th Cir.

2018) .............................................................................................11

*Harper v. Merckle*, 638 F.2d 848 (5th Cir. 1981)......................................................21

*Hughes v. Duncan*, 93 F.4th 374 (6th Cir. 2024)......................................................12

*Jones v. Brock*, 549 U.S. 199, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007)................11

*Livermore v. Lubelan*, 476 F.3d 397 (6th Cir. 2007)................................................10

*Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L.Ed.2d 9 (1991) ............... v, 19

*Peatross v. City of Memphis, Tenn.*, 818 F.3d 233 (6th Cir. 2016) ........................13

*Pierson v Ray*, 386 U.S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967)................15

*Pusey v. City of Youngstown*,11 F.3d 652 (6th Cir.1993) ....................................13

*Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678 (6th Cir. 2020) ..........................10

*Rockett v. Eighmy*, 71 F.4th 665 (8th Cir. 2023)................................................. 14, 15

*Sheets v. Mullins*, 287 F.3d 581 (6th Cir. 2002) ......................................................10

*Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978)16, 17, 23

*Waters v. City of Morristown, TN*, 242 F.3d 353 (6th Cir. 2001) ..........................13

*Zarcone v. Perry*, 572 F.2d 52 (2nd Cir. 1978) ......................................................22

**Statutes**

42 U.S.C. § 1997e....................................................................................................11

MCL § 600.1701(a)..................................................................................................22

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ v, 9

## <u>CONCISE STATEMENT OF ISSUE PRESENTED</u>

SHOULD THE COURT GRANT DEFENDANT KING'S MOTION TO DISMISS ON THE PLEADINGS, ON THE BASIS OF JUDICIAL IMMUNITY, WHERE THE DEFENDANT HAS THE BURDEN OF PROVING THAT HE WAS FUNCTIONING AS A JUDGE WHEN HE VIOLATED THE MINOR'S CONSTITUTIONAL RIGHTS AND COMMITTED TORTIOUS ACTS AGAINST HER WHILE COURT WAS NOT IN SESSION?

Plaintiff answers: NO.

Defendant answers: YES.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE DENIAL OF DEFENDANTS' MOTION</u>

Fed. R. Civ. P. 12(b)(6).

It is the defendant's burden to show that the actions he challenges justify the invocation of judicial immunity. *Archie v. Lanier*, 95 F.3d 438, 441 (6th Cir. 1996).

Judicial immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L.Ed.2d 9 (1991).

# I.  <u>STATEMENT OF FACTS</u>

## A.  <u>Introduction</u>

Defendant King's Brief in Support of Motion to Dismiss is premised upon the false statement that he is being sued in his official capacity. PageID.142. Plaintiff's complaint named Defendant King "individually." PageID.1. Plaintiff alleged in paragraph 1 of her Complaint that "[t]his is a civil action for monetary damages arising out of the extrajudicial conduct of Defendant JUDGE KENNETH KING …." PageID.3. In paragraph twelve of Plaintiff's Complaint, it is alleged that Defendant King was "acting extra-judicially, under the guise of state authority when [he] abused [his] power and violated Ms. ELG's civil rights and committed the torts alleged herein." PageID.6. Plaintiff further alleged that ELG "was subjected to unusual punishment that was cruel, before farcical process, because she upset Defendant JUDGE KING in his unofficial and personal capacity." PageID.15, ¶ 53.

The causes of action alleged against Defendant King include malicious prosecution in violation of the Fourth Amendment and unlawful arrest in violation of the Fourth Amendment. PageID.26, 30. Plaintiff has also alleged

1

the state law tort claims of intentional infliction of emotional distress, invasion of privacy, and false arrest and imprisonment. PageID.35, 37, 42.

Plaintiff was not required to plead the absence of judicial immunity because Defendant King has the burden of proving that he was performing the function of a judge to be entitled to immunity. Nevertheless, plaintiff's complaint pled the absence of judicial immunity. The plaintiff alleges sufficient facts to support the inferences and factual development that are detailed below.

### B.   <u>Factual Development</u>

Plaintiff's obligation at the time of filing was to plead plausible facts which, if accepted as true, and with all reasonable inferences being drawn in her favor, state a claim that is plausible on its face. Plaintiff has done what was required.

The facts, and all reasonable inferences drawn therefrom, will show that on August 13, 2024, the minor plaintiff was involved in a work program that was run by the Greening of Detroit. *See* PageID.6, ¶¶ 16-17. Upon information and belief, Defendant King's son was a team leader employed by the Greening of Detroit who assisted in coordinating a field trip to the 36th District Court, where teens in the program would first attend a lecture

2

presented by Defendant King. The students would then be given the opportunity to view a preliminary examination of an individual who was charged with murder. *See* PageID.7, 10, ¶¶ 18-20, 26, 40.

ELG was unaware of the field trip and did not intend to go before the court and interact with Defendant King in his judicial capacity. *See* PageID.7, ¶¶ 21-23. ELG had no option but to go on the field trip. Therefore, she was bused to the court. *See* PageID.7, ¶¶ 24-25.

The teens, including ELG, arrived as planned, at approximately 9:30 a.m. for Defendant King's lecture (one half hour before the preliminary examination that they would have an opportunity to observe was scheduled to begin). They were seated in the gallery of the courtroom assigned to Defendant King. *See* PageID.7, ¶ 25.

Things did not go entirely as planned. One of the court's morning matters involving a juvenile charged with homicide was delayed. Therefore, Defendant King took five minutes to hear the matter, and the students were present for that brief Zoom hearing which they were able to watch on television. *See* PageID.7, ¶ 26.

Defendant King's court officer did not give the gallery of teens his customary instructions regarding decorum during court proceedings, which

3

would have included an admonishment not to sleep <u>while court was in session</u>, because the students were present in the courtroom to attend a lecture delivered by Defendant King, not as interested persons attending the hearing. *See* PageID.18, ¶ 82. <u>Nothing material to this action occurred during the five-minute session</u>.

When the brief matter was concluded, the court session ended. Defendant King began his lecture to the teenagers, that he broadcast on YouTube, at approximately 9:35 a.m. *See* PageID.8, ¶ 30. He left the bench and walked across the floor to the front of the gallery. As he commenced his address, Defendant King asked the teens if there was anybody in the audience who wanted to be a judge. *See* PageID.8, ¶ 28. One young man raised his hand, and the judge invited him to come forward. Judge King disrobed, put the judge's robe on the adolescent, and invited him to sit behind the bench for the duration of the presentation. *See* ECF No. 1, ¶29.

Defendant King thereafter talked to the teen audience for approximately 45 minutes before singling out ELG. Defendant King discussed his youth, his education, his career as a prosecutor, and told war stories about being an attorney and a judge. *See* PageID.8, ¶ 29.

4

In the middle of his lecture, Defendant King noticed that ELG had nodded off. At approximately 10:20 a.m., Defendant King approached ELG and screamed "Wake up!" before making some snide remarks. *See* PageID.8-9, ¶¶ 31-32.

Defendant King then continued his lecture but singled out ELG again, approximately 10 minutes later. Defendant King told ELG to get up and relieve herself. *See* PageID.9, ¶ 34. ELG left the courtroom.

Defendant King and his court officer, Defendant John Doe Court Officer, developed their plan. *See* PageID.9, ¶ 36. Defendant King told his audience, during the lecture, that he intended to put ELG in the lock-up because he believed that she had disrespected him, and he did not like her attitude. *See* PageID.9, 12-13, ¶¶ 36, 51.

He was going to have ELG handcuffed, changed into a jail outfit, and held in the lock-up, <u>like real defendants</u>, and then he was going to belittle her with a mock trial, designed to look real to ELG. *See* PageID.10-11, ¶¶ 37-43. Defendant King subsequently informed the media that he had intended to orchestrate his own episode of "Scared Straight." *See* PageID.9, ¶¶ 36, 51.

ELG remained outside of the courtroom while the lecture continued for another 15 minutes before she was let back inside. *See* PageID.9-10, ¶¶

5

35, 37. It is believed that the evidence will show that the judge concluded the lecture, stating "time to do some work." It was nearing the time for the preliminary examination; however, the court was still not called into session. *See* PageID.10, ¶ 40.

Defendant King addressed ELG when she re-entered. It is believed that the evidence will show that first, he threatened to lock her up. Then, dissatisfied with her body language, he pointed to the homicide suspect in the lock-up who was being held for his preliminary examination and said to John Doe Court Officer: "Soon as we bring the prisoner out, she can step back there. We got a uniform for her too. She can put on the whole thing -- the uniform." Defendant, John Doe Court Officer, approached ELG and told her that "her attitude was showing everything," as Defendant King removed a jail jumpsuit that was handed to him, from a plastic bag at the bench. *See* PageID.10, ¶¶ 38-42.

It is believed that the evidence will show that then, and only then, did Defendant John Doe Court Officer give instructions to the gallery, including the teens, who were now present to watch an actual court proceeding. The evidence will show that he instructed the following:

6

> All right. Listen up. Court's <u>about to be in session</u>. <u>While Court is in session</u>, there's no talking, no sleeping, no slouching, you have to sit up. No eating in the courtroom and no falling asleep. Okay.
>
> One other thing, I see a lot of people chewing gum. Gum is not allowed to be chewed in the courtroom. Y'all need to get rid of your gum. I have a garbage can right here. Please get rid of your gum.
>
> If I see anybody not adhering to those rules, <u>I'ma ask that you step out of the courtroom.</u> Okay?

*See* PageID.10, ¶ 40.

Defendant John Doe Court Officer then walked Eva toward the lock-up before the real case was called. *See* PageID.10, ¶¶ 39-40. As he did that, Defendant Doe made inquiry of Defendant King as to how real the fake process was supposed to look. It is believed that Defendant King told him, "<u>just like a regular Defendant</u> that's being held in contempt of court, she got to get dressed too, jail clothes, she can go downstairs." *See* PageID.10-11, ¶¶ 36, 43-46.

ELG was locked up. She was in the lock-up for nearly two hours, before being brought back into the courtroom in handcuffs for her mock trial. *See* PageID.11, ¶ 43. During her time in the lock-up, Defendant Jane Roe Officer handcuffed ELG and made her put on the jail jumpsuit. *See* PageID.10-11, ¶¶ 41-43. The fact that ELG was not processed and was not

7

required to entirely remove her street clothes is evidence that Defendant Jane Roe Court Officer was a participant in the farce. *See* PageID.11, ¶¶ 43-45.

After being brought back into the courtroom, ELG stood handcuffed, on camera and visible to an internet audience, at the podium of the court, in the jail jumpsuit for another fifteen minutes as Defendant King conducted her mock trial. *See* PageID.11, ¶¶ 43. Defendant King made ELG disclose her legal name and the name of her high school over social media. *See* PageID.11, ¶¶ 48. Then he told her stories of mentally ill children she would encounter if he sent her to the juvenile detention facility, one of which Defendant King claimed stuck a spoon up their rectum and then spread feces on the wall. *See* PageID.12, ¶ 49.

Of course, it was a show for the audience and Defendant King ultimately let ELG leave. By the time she was permitted to remove the jumpsuit and leave the courtroom, she had been held for over two hours.

Defendant King made it appear to ELG that the proceeding was official, when it was not. Counsel was not appointed for ELG because there was no case, no case number, and the process was fake. *See* PageID.11, ¶¶ 44-47. Rather, Defendant King asked the defense attorney from the prior preliminary examination to stick around and pose as ELG's defense

8

attorney. *See* PageID.11, ¶ 47. The attorney was paged during the mock proceeding and left for another courtroom in the middle of the mock trial. Then, another attorney seated in the gallery was allowed to speak on ELG's behalf. Though the proceedings, broadcast on YouTube, were farcical, they were very real to ELG.

Defendant King does not challenge in his motion whether the facts alleged and the inferences that can reasonably be drawn from them support the counts of plaintiff's complaint. Rather, Defendant King incorrectly claims that plaintiff has failed to adequately plead the absence of judicial immunity.

## II. <u>ARGUMENT</u>

### A.   <u>Standard of Review</u>

Plaintiff generally accepts the standard of review for a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) stated by Defendant King in his Brief in Support of Motion. *See* PageID.144. The standard is consistent with what this court has previously written and that is quoted in Plaintiff's Response to the Universal Defendants' Motion to Dismiss. *See* PageID.120-121.

Plaintiff takes exception to the statement that "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified

immunity," quoted from *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007) because the defendant is not claiming that he is entitled to qualified immunity in his motion. The defendant is claiming that he is entitled to absolute judicial immunity. In applying the functional analysis necessary to determine whether a person is entitled to absolute immunity, "[the] decisions have … emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 1939, 114 L. Ed. 2d 547 (1991); *Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678, 690-691 (6th Cir. 2020). *See also*, *Archie v. Lanier*, 95 F.3d 438, 441 (6th Cir. 1996) (burden on judge to show that the actions the plaintiff challenges justify the invocation of judicial immunity).

**B.    Plaintiff is not required to plead the absence of absolute immunity.**

Because the person asserting absolute immunity bears the burden of proving that such immunity is justified for the function in question, it is akin to an affirmative defense. *See Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (labeling "qualified immunity" as an "affirmative defense," though immunity is described as an *immunity from suit* rather than a mere defense

to liability). When the defendant has the burden of proving an affirmative defense, the plaintiff is not required to specially plead facts that negate the defense. *See Archie,* 95 F.3d at 440-441 (denial of judge's 12(b)(6) motion on the basis of judicial immunity was appropriate where the defendant asserted that he was entitled to judicial immunity).

In that regard, the Supreme Court has held that the "failure to exhaust" requirement of the Prison Litigation Reform Act of 1996 (PRLA), 42 U.S.C. § 1997e, is an affirmative defense, for which the defendant bears the burden of proof. *See e.g. Jones v. Brock*, 549 U.S. 199, 216, 127 S. Ct. 910, 921, 166 L.Ed.2d 798 (2007); *Franklin American Mtg. Co. v. University Nat'l Bank*, 910 F.3d 270, 284 (6th Cir. 2018) (party asserting affirmative defense bears the burden of proving the defense). As a proposition for which the defendant bears the burden of proof, plaintiffs are not required to specially plead or demonstrate exhaustion in their complaints. *Jones*, 549 U.S. at 216. It follows that a plaintiff is not required to plead the lack of judicial immunity, to state a valid claim in her complaint.

Defendant King does not challenge plaintiff's factual support for the <u>claims that she made</u>. Rather, Defendant King alleges facts that he contends support his anticipated <u>defense</u>. Therefore, the plaintiff has stated proper

11

claims and Defendant King has alleged an affirmative defense. There is no basis for dismissal on the pleadings in these circumstances. Plaintiff requests that defendant's 12(b)(6) motion be denied.

### C.   Plaintiff has sued Defendant King in his individual capacity.

Defendant King incorrectly claims that plaintiff has sued him in his official capacity and argues that "[f]ederal common law has long afforded judges absolute immunity from suits for money damages arising out of actions taken in a judge's official capacity." *Hughes v. Duncan*, 93 F.4th 374, 378 (6th Cir. 2024)." PageID.145. Plaintiff does not disagree with the general proposition stated in defendant's brief. However, plaintiff has sued Defendant King in his individual capacity for the personal wrongs that he committed against ELG under color of law. Plaintiff's complaint alleges that Defendant King was not performing the function of a judge when he violated ELG's rights, meaning he was not acting in his official capacity as a judge. Perhaps Defendant King confuses the phrase "under color of law" with the phrase "official capacity."

> It is important to note at the outset that a §1983 *individual*-capacity claim differs from a §1983 *official*-capacity claim. … An official-capacity claim against a person is essentially a claim against the municipality [or other arm of government]. … On the

other hand, an individual-capacity claim seeks to hold an official personally liable for the wrong alleged …. "On the merits, to establish *personal* liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right[.]" ….

*Peatross v. City of Memphis, Tenn.*, 818 F.3d 233, 241 (6th Cir. 2016) (citations omitted, emphasis in original).

"Under color of law" means "under pretense of law." *Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (6th Cir. 2001). Plaintiff alleges that Defendant King was not performing the function of a judge when he deprived ELG of her federal rights; however, he used the authority of his title to accomplish the deprivation. In other words, he made ELG believe that the process that he concocted was genuine.

Defendant King's assertion that plaintiff's complaint must be dismissed because he is being sued in his official capacity is erroneous. "In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." *Pusey v. City of Youngstown,* 11 F.3d 652, 657 (6th Cir.1993). *See also Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

13

Plaintiff has sued Defendant King individually. It is his burden to prove that he was functioning in a judicial capacity when the acts alleged in plaintiff's complaint occurred. Plaintiff has properly pled that he was not.

### D. <u>History of Judicial Immunity</u>

"Judicial immunity" has been characterized, since its recognition in modern common law, as "absolute immunity" from civil liability for the actions of judges undertaken "whilst exercising their judicial functions" within their judicial authority. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 354 (1871).

A good history of judicial immunity was articulated by the Eighth Circuit in *Rockett v. Eighmy*, 71 F.4th 665, 668-670 (8th Cir. 2023). It was stated that "a judge cannot be liable for what 'a Judge doth as Judge.'" *Id*. at 669 (quoting *Floyd v. Barker*, 77 Eng. Rep. 1305, 1307 (Star Chamber 1607)). Of course, the opposite was true, a judge would not be immune when the person acted without the power and authority of judge. *Rockett,* 71 F.4th at 668-670.

The purpose of the doctrine in England was "to insulate common-law judges on the King's courts from their rivals on other courts." *Id*. The rationale for judicial immunity waned in the American colonies, such that

the purpose of judicial immunity shifted from protecting one court from the actions of another, to "protecting judicial independence: allowing judges 'to act upon [their] own convictions, without apprehension of personal consequences.'" *Id.*

> It is a judge's duty to decide all cases within [the court's] jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. [The judge's] errors may be corrected on appeal, but [the judge] should not have to fear that unsatisfied litigants may hound [the court] with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision making but to intimidation.

*Pierson v Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 1218, 18 L. Ed. 2d 288 (1967).

The earliest American cases addressing judicial immunity contemplated that the protection was limited to the adjudicative process of decision-making. In other words, when there was an actual case or controversy, involving litigants properly before the court, a judge could not be sued for making a ruling. The litigants' remedy for dissatisfaction with a decision is the litigant's appellate right. Thus, the common elements to the application of judicial immunity have historically been: (1) a case or controversy with appellate rights, (2) parties to the lawsuit, and (3) a decision by the judge – a judicial act.

In considering "judicial acts," the Supreme Court has discussed the distinction between "excess of jurisdiction and the clear absence of all jurisdiction over the subject matter."

> Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.

*Bradley,* 80 U.S. (Wall.) at 351-352. As the Court applied its rationale to the facts of the case before it, the Court held, "[a]nd the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is <u>jurisdiction of both subject and person</u>, applies in cases of this kind, and for the same reasons." *Id.* at 352 (emphasis added). Immunity applies only if the judge has subject matter jurisdiction and personal jurisdiction, which depends upon whether the plaintiff sought out the judge in an official capacity.

The Court thereafter held in *Stump v. Sparkman*, 435 U.S. 349, 355-356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978), that judicial immunity applies to actions taken by judges within their jurisdiction. The *Stump* Court, despite the tragic result, held that nothing prevented an Indiana court of general jurisdiction from considering a petition for sterilization of their daughter

16

brought by the parents of a minor. *Id.* at 358-360. The judge had both personal and subject matter jurisdiction despite the existence of procedural irregularities. *See Id.* at 359.

The procedural deficiencies: no docket number, no notice to the minor, no hearing, and no guardian ad litem, did not expose the judge to personal liability because, the judge "took cognizance" of his actions. *Stump,* 435 U.S. at 360-361. The judge signed the petition. Taking cognizance means making the action official by, for example, signing an order. Also important is whether "the confrontation arose directly and immediately out of a visit to the judge in his official capacity." *Id.* at 361.

Considering the cases it cited; the *Stump* Court identified several factors in determining whether an act by a judge is a judicial one. The Court held they include: (1) the nature of the act itself, i.e., whether it is a function normally performed by a judge, and (2) the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity. *Stump,* 435 U.S. at 362.

Thereafter, the Supreme Court in *Forrester v. White*, 484 U.S. 219, 108 S. Ct. 538 (1988), holding that a judge is not immune from suit for administrative actions (hiring and firing), elaborated upon the functional

17

analysis, noting that "[m]ost judicial mistakes or wrongs are open to correction through ordinary mechanisms of review [appeal], which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester,* 484 U.S. at 227. Thus, immunity is afforded to adjudicative functions, in part, because the disgruntled litigant has appellate rights independent of filing a civil lawsuit.

The *Forrester* court, after previously noting that it was not writing on a clean slate when applying the doctrine of judicial immunity, and adding that the "Court ha[d] never undertaken to articulate a precise and general definition of the class of acts entitled to immunity," *id.*, said,

> Difficulties have arisen primarily in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and <u>acts that simply happen to have been done by judges</u>. Here, as in other contexts, immunity is defined by the *functions* it protects and serves, not by the person to whom it attaches.

484 U.S. at 227 (underscore added).

The Court recognized the obvious, an act is not a judicial act just because a judge says it is. Furthermore, the Court held that hiring and firing decisions, "-- like many others involved in supervising court employees, and overseeing the efficient operation of a court – may have been quite important in providing the necessary conditions of a sound adjudicative system. The

18

decisions at issue, were not themselves judicial or adjudicative." *Id.* at 229. That the decisions were made in a physical courthouse, did not transform administrative functions into judicial functions. Like title does not determine the function, the location of the act does not determine the function.

From the foregoing cases (and others), the Supreme Court, in *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L.Ed.2d 9 (1991), articulated the basic inquiry that must be made in assessing whether judicial immunity applies. It said,

> Our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. … Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. …

502 U.S. at 11-12 (citations omitted). The Court clarified that it is the nature and function of the act that must be considered in deciding whether it was a judicial act. *Id.* at 13.

More was said about the functional analysis in *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993) (applying the functional analysis to claims of absolute prosecutorial immunity). The case held that the timing of the action is important. In that regard, a prosecutor did not

19

enjoy absolute immunity from investigatory actions undertaken by the prosecutor before probable cause for arrest was established because the prosecutor was acting no differently than a detective before charges were brought. *Id.* at 273-274.

> When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.' *** Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he 'has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.' ***
>
> A prosecutor neither is, nor should consider himself to be, an advocate [protected by absolute immunity] before he has probable cause to have anyone arrested.

*Buckley*, 509 U.S. at 273-274.

The *Buckley* Court similarly found that the same prosecutor was not immune from civil liability for comments made to the media because comments made to the media "have no functional tie to the judicial process just because they are made by a prosecutor." *Id.* at 277.

> The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions.

*Id.* at 278.

The Fifth Circuit addressed "judicial acts" in the case of *Harper v. Merckle*, 638 F.2d 848, 859 (5th Cir. 1981). In a case involving the improper use of contempt proceedings:

> we hold only that when it is beyond reasonable dispute that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears certain that no party has invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to "judicial acts."

*Harper*, 638 F.2d at 859.

### E.   <u>Application</u>

Defendant King lacked all jurisdiction over ELG. She was not a party to a case or controversy. PageID.12-13, ¶ 51. She had no appellate rights in a mock trial.

The defense argues that judges normally preside over contempt proceedings. That does not establish jurisdiction. The defense fails to recognize that there must be jurisdiction over the person before considering the nature of the proceeding. In Michigan, a court has jurisdiction to hold a spectator in contempt for "[d]isorderly contemptuous, or insolent behavior, <u>committed during its sitting</u>, in its immediate view and presence, and

21

directly tending to interrupt its proceedings or impair the respect due to its authority." MCL § 600.1701(a) (emphasis added). *See*, PageID.17, ¶ 73.

Plaintiff has alleged that the events at issue occurred <u>before</u> court was "sitting." Instead, the events at issue occurred during a lecture that was part of a fieldtrip. *See* PageID.8, 17, ¶¶ 30, 74-75. Plaintiff has also alleged that Defendant King was personally motivated to orchestrate his own version of "Scared Straight." Like in *Zarcone v. Perry*, 572 F.2d 52, 53 (2nd Cir. 1978), where an award of compensatory and punitive damages was appropriate in a case where the judge feigned contempt proceedings for actions that occurred while court was not in session, an award of compensatory and punitive damages is appropriate in this case where fake proceedings were instituted for actions that occurred while court was not in session. Plaintiff has appropriately alleged the lack of all personal and subject matter jurisdiction as well as facts in support of the allegation.

Plaintiff has also alleged, with factual support, that this cause of action arises out of Defendant King's actions as lecturer as opposed to judge. (PageID.7-8, 17, ¶¶ 18-20, 27, 75. Like public remarks to the media were not a prosecutorial function in *Buckley,* 509 U.S. at 278, a lecture to students broadcast on social media is not a judicial function.

22

While a mock trial might look like a contempt proceeding, plaintiff has alleged that ELG was an unwilling participant in a fake trial. PageID.11, ¶ 43. Though cases have held that the informality of a proceeding does not preclude the conclusion that it was a court proceeding, where the court took cognizance of its actions in the form of an order, *Stump*, 435 U.S. at 361, in this matter, the court did not take cognizance of its actions. The matter was not given a case number. PageID.11, ¶ 44. There is no official record of the proceeding because court was not in session. PageID.11, 18, ¶¶ 45, 77. Furthermore, Defendant King told the press that the mock trial was his version of "Scared Straight." PageID.9, 12-13, ¶¶ 36, 51-52. Consequently, a person reviewing the public record will not find an order of the court or any acknowledgement of the presence of ELG within the jurisdiction of the 36th District Court.

There is no record of ELG because she did not engage Defendant King in his official capacity. PageID.17, ¶ 76. Similarly, Defendant King did not intend to engage ELG in an official capacity; rather, he intended to orchestrate his own version of "Scared Straight" that he produced and broadcast to the public. PageID.13, 21, ¶¶ 52, 90, 92.

23

Plaintiff has properly alleged that Defendant King was not performing a judicial function when he caused ELG to be humiliated, unlawfully arrested, and unlawfully detained. In summary, Defendant King lacked jurisdiction over ELG because she was not a party to a case or controversy with appellate rights. ELG did not engage Defendant King in his official capacity. The matters at issue did not occur while court was in session. Lectures and mock trials are not judicial functions. Defendant King intended to produce his own version of "Scared Straight." He was personally motivated. Defendant King cannot successfully assert immunity where he was not engaged in judicial decision-making and remains subject to civil liability. Barring this action would not promote the goal of judicial independence; rather, it would encourage extra-judicial misconduct.

Wherefore, Plaintiff, ELG, a minor by Parent and Next Friend, LATOREYA TILL, through her attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., requests that this Honorable Court Deny Defendant KING's Motion to Dismiss ELG's Complaint.

24

Respectfully submitted,

/s/ Gary N. Felty, Jr.
JAMES J. HARRINGTON (P65351)
GARY N. FELTY, JR. (P55554)
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555
g.felty@fiegerlaw.com

Dated: 11/11/2024

---

**CERTIFICATE OF SERVICE**

I hereby certify that on 11/11/2024, I served the foregoing document to all counsel of record and with the Clerk of the Court using the ECF system.

I further hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: N/A

/s/ Gary N. Felty, Jr.
JAMES J. HARRINGTON (P65351)
GARY N. FELTY, JR. (P55554)
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555
g.felty@fiegerlaw.com