UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELG, a minor child by next friend,
LATOREYA TILL,

                  Plaintiffs,                        Case Number 24-12195

v.                                            Honorable David M. Lawson

KENNETH KING, UNIVERSAL PROTECTION
SERVICES, JOHN DOE COURT OFFICER,
and JANE DOE COURT OFFICER,

                  Defendants.

_____/

## OPINION AND ORDER DENYING MOTIONS TO DISMISS BY DEFENDANTS KENNETH KING AND CATHY GREER-FORTE, AND GRANTING IN PART AND DENYING IN PART UNIVERSAL PROTECTION SERVICES'S MOTION TO DISMISS

When fifteen-year-old ELG traveled to a Detroit courtroom last summer for a civics-oriented summer camp field trip, she had no idea that she would be arrested, detained, and subject to a mock trial like a common criminal for the transgression of dozing off between sessions of court while 36th District Court Judge Kenneth King lectured about his former legal practice. ELG was placed in handcuffs, forced to wear a prison jumpsuit, and held in a court detention cell for several hours. She then was made to appear as a mock "defendant" in a "trial" where her peers on the fieldtrip "decided" her fate. All of this allegedly was streamed on the court's YouTube channel for the world to see. ELG, through her mother and next friend, understandably brought suit against Judge King, two court officers, and the company that employed one of the officers. The amended complaint alleges a variety of constitutional violations and state law torts. Judge King has filed a motion to dismiss arguing that absolute judicial immunity protects him from this lawsuit, contending that he had a right to use his discretion to maintain courtroom decorum. Court officer Cathy Greer-Forte also moves to dismiss claiming quasi-judicial immunity, and her employer,

defendant Universal Protection Services, seeks dismissal arguing the plaintiff's claims against it must fail if its employee receives immunity.

The doctrine of absolute judicial immunity is quite broad — "sweeping" in the words of the Supreme Court. *Forrester v. White*, 484 U.S. 219, 225 (1988). It may be overcome, however, when the judicial officer's action can be characterized as "nonjudicial," or when the judge acts in the absence of all jurisdiction. The plaintiff has pleaded facts from which it could be inferred plausibly that Judge King's actions toward the minor plaintiff occurred when court was not in session and he was performing a nonjudicial role, using the City's courtroom as a lecture forum. Discovery may establish otherwise, but at this stage of the case it is not clear that absolute judicial immunity will shield Judge King or his court officer from liability. The motions to dismiss by Judge King and court officer Greer-Forte will be denied. The plaintiff's federal claim against defendant Universal Protection Services is based on vicarious liability and therefore is not viable. That claim will be dismissed.

I.

The plaintiff's claims grow out of events that occurred during a field trip to the 36th District Court in Detroit. The following facts are taken from the amended complaint, which are accepted as true for the purpose of these motions. *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)).

Plaintiff ELG, a minor, is represented in this action by her mother, Latoreya Till. On August 13, 2024, ELG visited the 36th District Court as part of a summer vocational program organized by a local nonprofit agency. Am. Compl. ¶¶ 16-20. When the group arrived at the court, they were seated in the gallery of District Judge Kenneth King's courtroom to watch the day's proceedings. *Id.* at ¶¶ 25-27. After Judge King handled a homicide proceeding, he recessed court

and left the bench to speak with the youths about careers in the law. *Id.* at ¶ 29.  One of the students spoke up to say he was interested in becoming a judge, so Judge King gave him his judicial robe and had him sit at the bench. *Id.* ¶ 30.  Judge King then proceeded to lecture the students about his experiences as a practicing attorney. *Ibid.*  The lecture was broadcast publicly on the court's YouTube livestream platform. *Id.* ¶ 31.

As Judge King lectured, ELG fell asleep briefly. *Id.* ¶ 32.  Judge King noticed and "berated" her, comparing her to a juvenile delinquent. *Id.* ¶ 33.  ELG apologized and Judge King moved on for a time, but ELG soon dozed off again. *Id.* ¶ 34.  Judge King told ELG to go to the restroom and get a drink of water. *Id.* ¶¶ 35-36.  It was during this time, the plaintiff alleges, that Judge King formed a plan to use "Scared Straight" tactics on her. *Id.* ¶ 37.

When ELG returned to the courtroom, court officer Keith Taylor "derided" her for "disrespecting" Judge King. *Id.* ¶¶ 38-39.  He directed her to the side of the bench and ordered her to stand still while a real defendant was escorted into the courtroom from a detention cell. *Id.* ¶ 40.  Taylor then placed ELG into the detention cell and locked her inside while Judge King brought court back into session to hear another case. *Id.* ¶ 41.  Ten minutes later, court officer Cathy R. Greer-Forte, who is employed by defendant Universal Protection Services, opened the cell where ELG was waiting and instructed her to put on a jail jumpsuit over her clothing.  ELG remained in her cell for "hours" while Judge King heard cases in the courtroom. *Id.* ¶ 44.

After the day's proceedings had ended, Greer-Forte brought ELG back into the courtroom where she became "the defendant" in a "mock trial" led by Judge King. *Id.* ¶ 44.  Although the "proceedings" continued to be streamed on YouTube, there was no official case number or court record. *Id.* ¶¶ 45-46.  During the "trial," Judge King made ELG disclose her name and age.  He commandeered a real private attorney serve as her "counsel." *Id.* ¶¶ 48-49.  He also threatened to

send ELG to "juvey" and relayed stories about poor conditions at the Wayne County juvenile detention center. *Id.* ¶ 50. At the conclusion of the "trial," Judge King asked ELG's peers to serve as a mock jury and decide whether she should go to the juvenile detention facility. *Id.* ¶ 51. The amended complaint does not explain how the events concluded, but there is no indication that ELG ever was "convicted" or "sentenced." However, the plaintiff alleges that Judge King spoke with the media about the event and stated that it was his version of a "Scared Straight" program and that ELG was disrespectful and required his "mentorship." *Id.* ¶¶ 52-53. The plaintiff also avers that Judge King "acknowledged" that he lacked jurisdiction to hold her in contempt. *Id.* ¶ 53.

ELG, through her mother, brought suit on August 21, 2024. The amended complaint pleads eight claims: malicious prosecution and unlawful arrest in violation of the Fourth Amendment via 42 U.S.C. § 1983 (Counts I and II); and intentional infliction of emotional distress (Count III), invasion of privacy (Count IV), and false arrest and imprisonment (Count V) under Michigan common law. Counts I through V are pleaded only against Judge King. The plaintiff also alleges unlawful seizure in violation of the Fourth Amendment via section 1983 (Count VI) and false arrest under state law (Count VII) against defendants Taylor and Greer-Forte. The plaintiff also includes a count styled as "vicarious liability" against Universal Protection Services, Ms. Greer-Forte's employer (Count VIII).

Judge King, Greer-Forte, and Universal Protection Services filed motions to dismiss the case on immunity grounds. The motions are directed at the original complaint, but the parties agree that that they will be considered as addressing the later-filed amended complaint. The Court heard oral argument on February 19, 2025. At the time, defendant Keith Taylor had not been served and had not appeared in the case.

II.

Defendants King and Greer-Forte argue that the plaintiff has not made allegations in the complaint sufficient to state a claim for relief because all the claims are barred by immunity doctrines. The issues raised are narrow and require an examination of the contours of judicial and quasi-judicial immunity defenses. Defendant Universal Protection Services maintains that if Greer-Forte is entitled to immunity, the plaintiff's claims against it must also be dismissed. The defendants invoke Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, the plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, before a court considers documents "integral to the claims" and that are referenced in the complaint, "it must also be clear that there exist no material disputed issues of fact regarding the relevance of the documents." *Diei v. Boyd*, 116 F.4th 637, 644 (6th Cir. 2024) (quoting

*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012)).  If those extra-complaint materials are to be considered, the Court must convert the motion to a motion for summary judgment under Rule 56 and allow all parties to present evidence, which usually means that an opportunity to conduct discovery should be given.  *Id.* at 643 (citing Fed. R. Civ. P. 12(d)).

A.

Let's start with Judge King's motion.  He invokes the doctrine of absolute judicial immunity as the basis for the dismissal of ELG's case against him.  He insists that the facts pleaded by the plaintiff fail to demonstrate that he was acting outside his judicial role or in the complete absence of jurisdiction such that absolute judicial immunity would not apply.  Instead, he says that the complaint describes conduct suggesting that he was acting as a judge would act during contempt proceedings and that he is protected by immunity regardless of whether he acted in error, with malice, or was beyond the scope of his authority.  Michigan law, he says, grants judges the authority to maintain order in their courtrooms, and he points out that the students were observing court proceedings during their field trip.

A couple procedural points deserve mentioning.  First, because the immunity Judge King seeks is "absolute," he bears the burden "of showing that public policy requires an exemption of that scope.'"  *Flying Dog Brewery, LLLP v. Michigan Liquor Control Comm'n*, 597 F. App'x 342, 348 (6th Cir. 2015) (quoting *Butz v. Economou*, 438 U.S. 478, 506, (1978) (emphasis added)); *see also Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 648 (6th Cir. 2014).  Second, despite that allocation of the burden of persuasion, addressing the question in the context of a motion to dismiss is allowed.  Under Rule 12(b)(6), the Court is called upon to determine if the "complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  If the facts pleaded by the plaintiff and accepted as true fail to establish that immunity is inapplicable, then the matter is a pure question of law and there is no harm to the plaintiff in deciding it early in the litigation.  *See Barnes v. Winchell*, 105 F.3d 1111, 1123 (6th Cir. 1997); *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).  Finally, absolute judicial immunity shields judges who are sued either in their individual capacity or their official capacity.  *See Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007).

As mentioned earlier, the immunity afforded in this country to judges acting as such is "sweeping."  *Forrester v. White*, 484 U.S. 219, 225 (1988).  It is immunity in an absolute sense, that is, "immunity from suit, not just from [the] ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (*per curiam*).  More than a century ago, the Supreme Court endorsed "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871). The Supreme Court has explained that "[t]his immunity applies even when the judge is accused of acting maliciously and corruptly."  *Pierson v. Ray*, 386 U.S. 547, 554 (1967). The rationale for this immunity, the Court explained, is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" *Ibid.* (citing *Scott v. Stansfield*, 3 L.R. Ex. 220, 223 (1868)).

Nevertheless, judicial immunity may be overcome (1) when a judge takes nonjudicial action or (2) when a judge acts in complete absence of all jurisdiction.  *Mireles*, 502 U.S. at 11-

12.    To determine whether a particular act is non-judicial, a court must consider (i) "whether the act in question is a function that is normally performed by a judge," and (ii) "whether the parties dealt with the judge in his or her judicial capacity." *Brookings*, 389 F.3d at 617-18 (internal quotation marks omitted). "Whether an action is judicial depends on the nature and function of the act, not the act itself." *Dixon*, 492 F.3d at 674. As for the second category of circumstances where immunity does not apply, "[a]cts done 'in the clear absence of all jurisdiction' for which no immunity is afforded, should be distinguished from those actions in 'excess of jurisdiction' which fall within the ambit of immunity protection." *Id.* at 623 (quoting *Barnes*, 105 F.3d at 1122). "[A] judge acts in the clear absence of all jurisdiction 'only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides.'" *Id.* at 623 (quoting *Johnson v. Turner*, 125 F.3d 324, 334 (6th Cir. 1997)). "Judicial immunity, though absolute and firm, is something to be applied carefully and should not be extended further than its justification warrants." *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 521 (6th Cir. 2023).

1.

The plaintiff maintains that her complaint clearly demonstrates that Judge King is not entitled to immunity because he acted in the complete absence of jurisdiction by orchestrating his "Scared Straight" program. That argument misses the mark. True, the line between cases where a judge acts in excess of jurisdiction and is protected by immunity and cases where a judge acts in the complete absence of jurisdiction "is not self-revealing." *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019). However, the cases provide exemplary guidance. For instance, "a judge with general criminal jurisdiction [who] ruled that an act amounted to a crime when it did not, [] would merely act in excess of jurisdiction." *Ibid.* The opposite result would follow if a probate judge assumed authority over a criminal case. *Ibid.*

Judge King maintains that he enjoyed the authority — the jurisdiction — to enforce courtroom decorum and hold in contempt those who disrupt the administration of court proceedings or impugn the respect due to the court.  If that is what he was doing, he is on firm ground.  In Michigan, district court judges are vested with the same authority to punish for contempt as the circuit courts.  *See* Mich. Comp. Laws § 600.8317.  It therefore is difficult to see how a judge acting to enforce even a misguided sense of decorum in his own courtroom acts in the complete absence of jurisdiction.  Michigan's contempt statute authorizes judges to punish, among other things, "[d]isorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority" and "[a]ny breach of the peace, noise, or disturbance directly tending to interrupt its proceedings."  Mich. Comp. Laws § 600.1701.  The plaintiff argues that the contempt statute constrains Judge King's jurisdiction to conduct contempt proceedings only when the court was "sitting," but this argument, if anything, suggests that he acted in excess of his jurisdiction by conducting the "mock trial" when court was not formally "sitting," which is not sufficient to overcome an immunity defense.

ELG faces a formidable chore to establish that Judge King acted in the "clear absence of jurisdiction," if what he was doing was maintaining courtroom decorum.  The cases confer wide latitude to judges in the immunity context.  A relevant benchmark was laid down by the Supreme Court in *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  There, the Court held that a judge on an Indiana trial court did not act in the complete absence of all jurisdiction when he approved a petition for a young woman to be sterilized despite the fact that no state statute authorized him to approve that procedure.  435 U.S. at 357-59.  Significant to the Court's decision was the fact that the trial court was one of general jurisdiction.  *Id.* at 359.  Adding further color to the inquiry, in

- 9 -

*Brookings v. Clunk*, the Sixth Circuit held that a state probate judge did not act in the absence of all jurisdiction when he filed a criminal complaint against a party whom he later discovered had allegedly sought a fraudulent marriage license from him. This was despite the fact that the Judge did not discover the offending act until nearly seven years after the fact. 389 F.3d at 616, 623. Measured against these cases, Judge King's attempt to maintain an orderly courtroom — even if procedurally irregular and substantively deficient — would not be in the clear absence of his jurisdiction, if in fact that was the nature of his actions. *Cf. Stump*, 435 U.S. at 359 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.").

## 2.

The lingering question that governs this motion is whether the amended complaint includes facts to establish that Judge King was not performing a judicial act when he acted abusively toward ELG. When applying absolute immunity, the Court must discern whether the challenged acts are "normally performed by a judge" and look to the "expectations of the parties"—that is, "whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.

Some examples of non-judicial acts are obvious: Physical assaults and sexual harassment are not judicial in nature. *See Archie v. Lanier*, 95 F.3d 438, 441 (6th Cir. 1996). Nor is speaking with the media about a litigant. *See Barrett v. Harrington*, 130 F.3d 246, 261 (6th Cir. 1997). Other examples are slightly less obvious: A judge is not entitled to absolute immunity from ordinary employment suits brought by court employees. *See Forrester*, 484 U.S. at 229-30 (holding that the defendant judge acted in an administrative rather than a judicial capacity when he demoted and discharged an employee). Nor is a judge absolutely immune from promulgating rules and administrative orders. *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989).

On the other side of the line are actions that are examples of or relate "to those general functions that are normally performed by a judicial officer." *Cooper v. Parrish*, 203 F.3d 937, 945 (6th Cir. 2000). The core of the judicial role is "resolving disputes between parties who have invoked the jurisdiction of a court"; the acts that comprise a judge's decisional process therefore are "paradigmatic judicial acts." *Brookings*, 389 F.3d at 618. This would include presiding over hearings and issuing warrants, *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999), taking pleas and pronouncing sentences, *King v. McCree*, 573 F. App'x 430, 439 (6th Cir. 2014), and setting dates for hearings and collecting attorney's fees, *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994). It also is clear that a judge acts in his judicial capacity when he exercises control of his courtroom. *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994).

Judges even act in their judicial role when they initiate, rather than merely adjudicate, criminal complaints, when the criminal action is initiated to "preserve the integrity of the judicial system." *Brookings*, 389 F.3d at 622. The Sixth Circuit has expounded on the breadth of that concept in three cases with similar captions: *Barnes*, *Barrett*, and *Brookings*. *Barnes* involved a former couple who filed criminal complaints against one partner's estranged ex-wife for stalking. 105 F.3d at 1113. The pair came before a state court judge who modified the factual allegations in the complaints and thereafter assisted the former couple in finalizing them. *Ibid.* After the charges against the estranged partner were dismissed, she brought suit against the judge, alleging that he violated her "right to be free of arrest and prosecution and to due process of law." *Id.* at 1114. The Sixth Circuit determined that the state judge was entitled to immunity. Even though the judge's actions were "prosecutorial in nature," the court explained that there was no evidence that the "criminal prosecutions [were] based on the judge's private interests, completely separate from cases brought to court independently by the parties." *Id.* at 1118.

- 11 -

The court went a step further in *Barrett v. Harrington*, 130 F.3d 246, 249 (6th Cir. 1997). In that case, a judge wrote letters to prosecutors on court letterhead requesting an investigation of a disgruntled litigant. The litigant's conduct made the judge fear for her safety, but it also was the case that the litigant had discovered evidence that the judge dismissed her husband's parking tickets. *Ibid.* Again concluding that the judge was entitled to immunity for writing to the prosecutors, the court emphasized that the judge was attempting "to protect the integrity of the judicial decision-making process" and observed that "[j]ust as a judge's citation for contempt against a party who obstructs justice is a judicial act taken to preserve integrity of the judicial system, so too is the instigation of criminal proceedings against a disgruntled litigant whose conduct may amount to obstruction." *Id.* at 259. Based on the leeway afforded by *Barnes* and *Barrett*, the Sixth Circuit in *Brookings* held that a judge was entitled to immunity for swearing out a criminal complaint against a litigant who he believed had committed fraud on the court nearly seven years prior. *Brookings*, 389 F.3d at 621-22. In sum, the Sixth Circuit has afforded judges a wide scope to, in effect, police their notions of judicial integrity.

Measured against these guideposts, the allegations in the plaintiff's amended complaint present a close case. Her pleading paints a picture of a judge who felt disrespected while he was lecturing students, albeit within the walls of his courtroom, and wished to teach the plaintiff a lesson misusing the machinery of his court.

Ultimately the inquiry hinges on the "function" of the acts Judge King allegedly took, not the acts themselves. *Mireles*, 502 U.S. at 13. One might conclude that Judge King was performing the function of a judge when he reconvened his court to discipline ELG. However, the amended complaint includes facts that permit a different conclusion: that Judge King was retaliating against an adolescent who had the temerity to doze during his recounting of his career, using his courtroom

as a prop for his own devices.  Focusing on the acts specific to Judge King, ELG alleges that he 1) publicly berated and humiliated her for nodding off during his lecture, 2) "developed a plan for the amusement of his followers and fan base to cast [her], unwittingly, in what he later described as his own episode of 'Scared Straight,'" 3) made her disclose her name and other personal information, 4) made her participate in a "mock trial," 5) threatened to send her to a juvenile detention center, and 6) told the press that ELG "had a bad attitude, was disrespectful[,] and required his mentorship."  Am. Compl. ¶¶ 33, 37. 49, 50, 51, 53.  She alleges that Judge King instituted fake proceedings when court was not in session, which was beyond his power to do.  She also argues that from a functional perspective, Judge King acted as a teacher or lecturer and not a judge and that he did not intend to engage ELG in his official capacity but as a participant in a "Scared Straight" program broadcast to the public over the internet.  She maintains that she encountered Judge King as a sort of teacher, not as a judge.  She avers that her offending act — nodding off in the gallery — occurred after Judge King had left the bench, given his judicial robe to one of her peers, and was discussing his legal practice.  *Id.* ¶¶ 28-32.  Moreover, it was while Judge King was lecturing the students that he allegedly "berated" ELG and executed his "Scared Straight" tactics.  *Id.* ¶¶ 33, 37.  She argues that Judge King would not be entitled to immunity had he taken the same acts while teaching law students or serving as a keynote speaker at a public event.

Those allegations are sufficient to distance Judge King's actions from the judicial functions that the immunity doctrine insulate from liability.  Compare *Rockett as next friend of K.R. v. Eighmy*, 71 F.4th 665 (8th Cir. 2023).  There, a Missouri judge presiding over a custody dispute was frustrated by the unwillingness of the children involved to go with one of the parents.  Hearing the children's protests in the lobby, he proceeded to take them to jail and ordered them to remove

their clothing before entering separate cells. *Rockett*, 71 F.4th at 668. He came to release them about an hour later after they agreed to his terms. *Ibid.* The Eighth Circuit held that the judge was not entitled to judicial immunity for these acts, indicating that Missouri law did not permit him to punish the children for behavior that did not occur in the courtroom. *Id.* at 671-72. The Eighth Circuit cited the Missouri statutory scheme as part of its discussion of whether the judge's acts were judicial in nature. *Ibid.* Also critical to the court's decision was the fact the judge personally imposed the punishment on the children. *Id.* at 672. *Rockett* does not provide an exact template for the actions alleged in the complaint, but it does demonstrate that the judicial function is not broad enough to confer immunity upon the unusual type of discipline described in the amended complaint. The judicial function, as traditionally understood, does not include teaching, much less disciplining students who appear before a judge in a didactic relationship. And the fact that Judge King allegedly commented to the media that ELG required his "mentorship" suggests that he understood his actions to be non-judicial in nature.

Discovery may shed additional light on the events. It may be that the facts will show that Judge King's conduct related to the actual function of the court that day. Despite the objectionability of the method, it is not the "how" that matters for purposes of defining the judicial function but the "what." The Sixth Circuit has recognized "preserv[ing] the integrity of the judicial system," undoubtedly is a judicial function. *Barrett*, 130 F.3d at 259. And the case law teaches that "even if the particular act is not a function normally performed by a judge, it may constitute a judicial act if it *relates* to a general function normally performed by a judge." *Brookings*, 389 F.3d at 621. But the allegations in the amended complaint also permit the inference that Judge King was not defending the judicial branch or preserving courtroom decorum, but instead was striking out at a fifteen-year-old who insulted his lecturing prowess by dozing during his delivery.

At this stage of the case, this Court cannot conclude that the amended complaint fails to state a viable claim, even under the specter of absolute judicial immunity.

### B.

Court officer Cathy Greer-Forte also seeks the protection of immunity — quasi-judicial immunity — as derivative of Judge King's absolute immunity.  It is well-settled that such immunity "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).  "One who acts as the judge's designee, and who carries out a function for which the judge is immune, is . . . protected." *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997).  Because Judge King is not entitled to absolute immunity at this stage of the case, Ms. Greer-Forte's derivative arguments fail.

The plaintiff also contends that Ms. Greer-Forte is not entitled to immunity because she was not employed by the court but by Universal Protection Services, a private company.  For that proposition, she relies on *Rodriguez v. Providence Community Corrections, Inc.*, 191 F. Supp. 3d 758, 767 (M.D. Tenn. 2016).  There, the court denied quasi-judicial immunity to private company that administered a county's probation system, reasoning in large part that private actors do not always share the public interest.  *Rodriguez*, 191 F. Supp. 3d at 768 ("The perverse policy incentives attendant to immunizing private for-profit ventures is alone enough to deny the application of quasi-judicial immunity.").  The court also explained that the complaint did not include any allegations regarding the company's practices that could be considered judicial functions.  *Ibid.*

This Court previously has suggested, however, that private court security officers would be entitled to quasi-judicial immunity "when they follow an explicit directive from the court itself."

*Fareed v. G4S Secure Sols. (USA) Inc.*, 942 F. Supp. 2d 738, 746 (E.D. Mich. 2013).  In that case, court security officers at the same 36th District Court attempted to invoke immunity against the plaintiff's allegations that the officers forced him to remove his kufi, a type of Islamic head-covering.  *Id.* at 740.  We determined that the officers were not entitled to immunity because there was no record that any judge explicitly commanded the officers to force the plaintiff to remove his kufi.  *Id.* at 747.

Here, the allegations specific to Ms. Greer-Forte are that she opened the detention cell where ELG was waiting, handcuffed her, directed her to put on a jail jumpsuit over her clothing, and brought her back into the courtroom.  Am. Compl. ¶¶ 42-44.  There is no indication in the pleadings that any of these actions was taken at the direct request of Judge King.  Whether Judge King actually ordered Ms. Greer-Forte to direct the plaintiff to don the prison jumpsuit or use handcuffs for transporting her back to the courtroom, for instance, is left unspecified.  It is true that the plaintiff's claims against Ms. Greer-Forte — for violations of her Fourth Amendment rights and state law false arrest — proceed on the general theory that all of the acts ultimately flowed from Judge King's plan.  *See id.* ¶ 37 ("[Judge King] developed a plan for the amusement of his followers and fan base to cast Ms. ELG, unwittingly, in what he later described as his own episode of 'Scared Straight.'").  If Judge King is entitled to immunity for his orders, Ms. Greer-Forte also might be entitled to immunity for implementing them.  *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000) ("[A]n official is entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.'" (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)).  But the complaint does not reveal the precise contours of Judge King's orders, and this Court previously has explained that there is a "distinction between cases where a

- 16 -

courtroom deputy or police officer is carrying out a judge's orders, and those where the specific conduct alleged (e.g., use of excessive force), was not taken at the judge's direction." *Fareed*, 942 F. Supp. 2d at 746 (citing *Ingram v. Township of Deptford*, 858 F. Supp. 2d 386, 391 (D.N.J. 2012)).  It is certainly possible that Judge King did not direct that ELG be placed in handcuffs, order her to wear a prison jumpsuit, or be detained in a court holding cell.  Further discovery is necessary to resolve whether Ms. Greer-Forte also is entitled to immunity.

And if Judge King is not entitled to judicial immunity, Ms. Greer-Forte must be accountable for her own actions even if she acted at the behest of Judge King.  She does not cite a case holding that a court officer may be relieved of her constitutional obligations merely because she followed an order of a supervising, unimmune judicial officer.  "'[S]ince World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and [government actors] in such cases may be held liable under § 1983 if there is a reason why any of them should question the validity of that order.'"  *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010) (quoting *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004)); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) (explaining that section 1983 defendants are not "immune for the results of their official conduct simply because they were enforcing policies or orders promulgated by those with superior authority"); *Brent v. Ashley*, 247 F.3d 1294, 1305 (11th Cir. 2001) ("following orders does not immunize government agents from civil rights liability").

The amended complaint pleads a viable claim against defendant Greer-Forte.

## C.

Finally, Universal Protection Services, Ms. Greer-Forte's employer, asserts that the plaintiff's claim against it must fail if her claims against Ms. Greer-Forte are barred by quasi-

judicial immunity. The plaintiff agrees with that proposition, ECF No. 16, PageID.134, but this question merits further discussion, especially since the case against Ms. Greer-Forte will proceed.

The plaintiff pleaded "vicarious liability" as a separate count against Universal (Count VIII). But vicarious liability is not an independent cause of action; it is a theory of liability. *See Webster v. AutoZone Dev. LLC*, No. 23-13033, 2024 WL 4245402, at *7 (E.D. Mich. Sept. 19, 2024) ("Vicarious liability is not an independent claim in Michigan but is instead a theory of liability for otherwise substantiated tort claims."); *AeroFund Fin., Inc. v. Sexton Landscape, Inc.*, No. 16-13730, 2018 WL 6809185, at *4 (E.D. Mich. Sept. 29, 2018). It is clear enough, however, that the plaintiff's intent is to hold Universal liable on Counts VI and VII, her claims against Ms. Greer-Forte.

That theory may be viable for the state law false arrest claim stated in Count VII of the amended complaint, but for the federal claim under the Fourth Amendment in Count VI (via Count VIII), section 1983 does not countenance liability premised on a *respondeat superior* theory for public or private employers. *See Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citing *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The complaint includes no allegations that Universal itself caused the plaintiff's harm, nor that Ms. Greer-Forte acted pursuant to any custom or policy it promulgated. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Therefore, regardless of the immunity questions, there is no basis to hold her employer liable on the federal claim.

### III.

The amended complaint contains facts which, if believed, avoids the defenses of absolute judicial immunity and quasi-judicial immunity at this stage of the case. The amended complaint

does not state a viable claim for a violation of federal law under 42 U.S.C. § 1983 against defendant Universal Protection Services.

Accordingly, it is **ORDERED** that the motions to dismiss by defendants Kenneth King and Cathy Greer-Forte (ECF Nos. 11, 17) are **DENIED**.

It is further **ORDERED** the motion to dismiss by defendant Universal Protection Services (ECF No. 11) is **GRANTED IN PART**.  Counts VI and part of Count VIII are **DISMISSED** as to that defendant, only.  The motion is **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  May 22, 2025