**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

E.L.G., *a minor by Parent and Next Friend*
*Latoreya Till* and LATOREYA TILL,

Plaintiff,

v

JUDGE KENNETH KING,
Individually; UNIVERSAL PROTECTION
SERVICES d/b/a ALLIED UNIVERSAL
SECURITY SERVICES and/or ALLIED
UNIVERSAL SERVICES, LLC; KEITH
TAYLOR, individually; and CATHY R.
GREER-FORTE, Individually,

Defendants.

Case No. 2:24-cv-12195
Hon. David M. Lawson

---

**FIEGER, FIEGER,KENNEY**
**& HARRINGTON, P.C.**
JAMES J. HARRINGTON (P65351
GARY N. FELTY, JR. (P55554)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555/F:(248-355-3148
j.harrington@fiegerlaw.com


VALERIE HENNING MOCK (P55572)
MATTHEW J. HIGH (P82783)
**WILSON, ELSER, MOAKOWITZ**
**EDELMAN & DICKER, LLP**
Attorneys for Defendant Universal
Protection Service, LLC d/b/a Allied
Universal Security Services and
Cathy Greeer-Forte
17197 N Laurel Park Drive, Suite 201
Livonia, Michigan  48152
(313) 327-3100/(313) 327-3101 (F)
Valerie.mock@wilsonelser.com
Matthew.high@wilsonelser.com


**THE PERKINS LAW GROUP**
TODD RUSSELL PERKINS (P55623)
Attorney for Defendant King
615 Griswold, Suite 400
Detroit, Michigan  48226
(313) 964-1702
tperkins@perkinslawgroup.net



**KEITH TAYLOR,**
Defendant Pro Se
20312 Westhaven
Southfield, MI 48075
(313)622-3376/(248) 237-4397 (F)
ktsheriff1963@gmail.com

1

## MOTION TO SET ASIDE ENTRY OF DEFAULT

**NOW COMES,** defendant Keith Taylor, pro se, to state the following in support of this motion:

1. This is a civil case, where defendant Keith Taylor (hereafter referred to as Writer) is alleged to have violated various constitutional and state-law rights of the plaintiff during the course of his employment, as a court officer, at the direction of Defendant, 36th District Court Judge, Kenneth King.

2. Writer was not named in Plaintiff's original complaint but was listed as a defendant in the First Amended Complaint filed on December 30, 2024.

3. Writer has never been served personally with a summons or complaint, served by mail, given notice of the complaint or approached by a process server; until over two months after the entry of default against him.

4. Plaintiff's counsels claims there were diligent efforts made to serve Writer but they were unable to accomplish the task, even though on February 28, 2025 they received information that writer worked as a uniformed 36th District Court Officer every Tuesday and Wednesday which is the same court building where this incident was alleged to have occurred.

5. 36th District Court is open to the public, Monday through Fridays, from 8:00 am until 4:30 pm and courtroom doors were unlocked by uniformed court officers, including Writer, who all wore name tags, at 9:00 am.

6. Through April 30, 2025, no one came to the courtroom where Writer worked on Tuesdays and Wednesdays to notify me of any lawsuit, request my address, or arrange

for service.

7.  In the affidavit, attached as Exhibit 4 and submitted with Plaintiff's Motion to Extend Summons, and Allow Alternate Service of Process (EFC No. 39), filed with this Court on March 27, 2025; Plaintiff's process server, Jeffrey Menzer, acknowledged that on February 28, 2025, he was informed that Writer worked at 36th District Court on Tuesday and Wednesday every week. **Exhibit-1, Copy of affidavit of Jeffrey Menzer attached as exhibit-4 with Plaintiff's Motion to Extend Summons/Alternate Service**

8.  Writer's first notice of this lawsuit was an envelope received at my home by U.S. mail postmarked July 25, 2025, with the green return receipt still attached.

9.  The envelope was a certified mail from the Office of Fieger Law, containing a letter from Plaintiff's attorneys stating "Enclosed please find a copy of Plaintiffs First Amended Complaint ECF. No. 30,  Order Granting in Part Plaintiff's Motion for Alternate Service ECF No. 39, Clerk's Entry of Default ECF No. 48 and  Request for Clerk's Entry of Default ECF No. 55."  (**Exhibit-2, Copy of the front and back of the envelope along with a copy of the letter from the Feiger law firm**). There was no Summons included with the Complaint in this envelope.

10. The envelope also contained the First Amended Complaint, filed December 30, 2024 and received almost 7 months later; Order Granting in part Plaintiff's Motion to Extend/alternate service, filed on March 27, 2025 and received almost four months later by Writer;  the Order granting the motion in part was  filed April 29, 2025 and received almost 3 months later; and Plaintiff's Entry of <u>Default on</u>  June 24, 2025 was received  1 month later.

11. Writer received no other documentations, personal contact, common emails, text messages, or any other form of communication notifying me that I was involved in this lawsuit.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court grant this motion and enter an order setting aside the Entry of Default in this matter, allowing Writer the opportunity to defend.

Respectfully Submitted

**KEITH TAYLOR**

DATED: August 14, 2025

By: */s/ Keith Taylor*
Defendant Pro Se

4

## ISSUES PRESENTED

1.  WAS  THERE ANY CULPABLE CONDUCT BY DEFENDANT THAT PREVENTED PLAINTIFF

    FROM SERVING THE SUMMONS AND COMPLAINT ?

    ANSWER-NO

2.  WILL PLAINTIFF BE PREJUDICED IF THE ENTRY OF DEFAULT IS SET ASSIDE ?    ANSWER-

    NO

3.  DOES WRITER HAVE A MERITORIOUS DEFENSE?

    ANSWER- YES

## CONTROLLING AUTHOURITY

### COURT RULES

Fed.R.Civ.P.55(c)

Fed.R.Civ.P.60(b)

Fed.R.Civ.P 4.

### CASE LAW
*Shepherd Claims Service,* 796 F.2d. at 193

*INVST Fin. Group  Chem-Nuclear Sys. Inc.,* 815 F.2d 391:398 (6th Cir. 1987)

**STATEMENT OF FACT**

The summary of the most salient facts were summarized in the motion section. They will be

clarified, expanded and discussed further in the argument section.

**ARGUMENT**

**Standard of Review to Set Aside an Entry Of Default**

An entry of default was entered by the clerk against Writer on June 24, 2025. No Motion

for Default Judgment has been filed as of this date. "The court may set aside an entry of default

for good cause, and it may set aside a final default judgment under Rule 60 (b)". Fed. R. Civ. P.

55 (c) . Rule 55 (c): leaves to the discretion of the trial judge the decision whether to set aside an

entry of default. *Shepherd Claims Service*, 796 F. 2d. at 193 (1983). Three factors must be

determined to set aside a default under rule 55 (c): (1) whether the plaintiff will be prejudiced;

(2) whether the defendant has a meritorious defense; and 3 ) whether  the culpable conduct of the

defendant led to the default. Id at 192. Delay alone is not a sufficient for determining prejudice.

*INVST Fin. Group v. Chem-Nuclear Sys. Inc.,* 815 F. 2d 391: 398 (6th Cir. 1987 ). Likelihood of

success is not a measure as to the defense but if any defense relied upon states a defense good at

law, then a meritorious defense has been advanced.  Id at 398-399. All three factors must be

considered in ruling on a motion to set aside entry of default. S*hepard Claims*, 796F. 2d At 194.

However, when the first two factors militate in favor of setting aside the entry of the fault, it is an

abuse of discretion for a District Court to deny a rule 55 (c) motion in absence of a willful failure

of the moving party to appear and plead. *Id.*

**Defendant Has No Culpable Conduct**

In a Rule 55 (c) motion to set aside entry fault, the "good cause" standard is applied and

it  is not absolutely necessary that the negligent or oversight be excusable as a reason for the

delay. To be treated as culpable, the conduct of the defendant must display either an intent to dwarf judicial proceedings or a reckless disregard for the effect of the conduct on those proceedings Id. There is **absolutely no indication** in Plaintiff's motion for alternate service (ECF No. 39), Plaintiff's affidavits listed as exhibits or conduct by this writer; that reflects any intent to dwarf the proceedings, avoid service of process, or reckless disregard for the effect of my conduct. The motion and supporting docket history notes that the first-time Writer's name ever appeared as a party to this action was in the First Amended complaint filed on December 30, 2024.(ECF No.30}

**Plaintiff did not make reasonable, good faith efforts to serve Writer or give notice of litigation with the information available to them.**

Plaintiff's counsels indicate, in their motion to extend summons and allow alternate service, that their good faith efforts to serve Writer consists of numerous telephone calls, texts and emails during the month of March, 2025 to Attorney Todd Perkins who is the attorney for Defendant Judge King. Writer had not worked with Judge King for over six months at that time because Judge King had been removed from the civil and criminal docket to the traffic docket. Writer has never had any communication with Attorney Todd Perkins about this case and he has never had any authority to represent Writer in a legal capacity. Neither Attorney Perkins or Judge King would have any reason to know Writer's address. The motion does not reflect that any counsels or representatives of Plaintiff ever had any communication with Judge King, his counsel or the 36th District Court personnel about the simplest and most direct way to locate and inform me about this lawsuit. **There is no mention that anyone person associated with 36th District Court or this case was ever asked what courtroom I was working in on any of the eighteen Tuesdays and Wednesdays that I was there from February 28, 2028 when**

**Plaintiff's process server obtained the information until my last day of employment on April 30, 2025.**   Even if they chose not to serve Writer in the court, they could have informed me about the litigation and discussed arrangements to serve me outside of court after work. There was no issue of privacy about which courtroom I was working  in every Tuesday and Wednesday. According to all the information Writer received in the mail Plaintiff's representatives was only demanding Writer's home address, even from people who had no access to it. Many of the other court officers would routinely give them that information as readily as they would tell anyone what courtroom a particular  judge was assigned to. No one asked the court, Judge King or his counsel, the director of the court officers, or any court officers in any of the other courtrooms what courtroom I was assigned to on the dates they were inquiring. In hindsight Plaintiff's counsel cannot now allege that they did inquire about what courtroom I was working in on the 18 days that I was working in a courtroom. All of the people questioned had access to this information and there was no privacy issue.  Plaintiff's counsels concede in exhibit-4 of their motion that they had information on the specific two days of each week that I worked at the court for two months before my last date of employment.

Plaintiff's counsels also submitted emails to attorneys for Defendants Allied Universal and Defendant Greer- Forte requesting concurrence in a motion regarding mediation however, Writer has no affiliation with Allied or their attorneys. Writer never had any contact from Plaintiff's counsels or any of their representatives requesting my home address, requesting me to accept service or informing me that I was a party in their litigation before I received the envelope in the mail postmarked July 25, 2025.

Plaintiff's counsels cite in their motion for alternate service that defendant King's initial disclosures did not include the name of this writer. Writer did not participate in or have

9

knowledge of the preparation of the disclosures. Therefore, there is not a remote possibility

Writer has any culpability for the absence of my name in the disclosures.

**Writer has made no effort to avoid Mr. Menzer or any other representatives**, before

or after Mr. Menzer was informed that Writer only worked Tuesdays and Wednesdays. It is not

logical that Plaintiff's counsels dispatched another person to the court to serve Writer om Friday,

March 20,2025. According to **Exhibit-3, affidavit from Cesselie Herbert- Wix,** which is

exhibit 5 of plaintiff's motion, she went to 36th District Court on Friday March 20, in an attempt

to serve Writer, even though the known information would indicate Writer was not working on

that day. Ms. Herbert-Wix alleges that on her one trip to the 36th District Court she was asked to

leave a building that is open to the public. Interestingly, this did not happen with Mr. Menzer

during any of his three visits and numerous inquiries in the same building. My experience

indicates this is an extremely unusual event.

Mr. Menzer's affidavit indicates he returned to 36th District Court on Tuesday March 11,

2025 at 10:30 AM and his first task was to locate the service supervisor, which resulted in

information that she was not in the building. The affidavit then alleges he spent an hour at the

court attempting to locate Writer, to no avail. If Mr. Menzer is a seasoned process server he

would know that most courtrooms are unlocked by the court officers between 8:30 AM and 9:00

AM. That is the optimum time to have contact with judges, the court officers and other court

personnel, if a person is serious about making such contact. By 10:30 or 11:00, some courts may

be adjourned for a break or occasionally finished with their morning docked. During the

adjournments, some personnel may be absent from the court room. Mr. Menzer alleges he

arrived at the court at 10:30 and spent some time attempting to locate and speak with the director

before taking an hour searching through the courts. I am not certain, but my guess is Writer was

working in Judge Shawn Jaque's courtroom 234, the same courtroom where I was normally assigned after Judge King's reassignment to traffic court.

There are five or six courtrooms in 36th District Court, all located on the north side of the hall on each of the 3rd, 4th and 5th floors. There are only three courtrooms on South end of the hall on the 2nd floor. Every courtroom is small and a cursory glance can be made into the courtrooms by looking through the glass window of each door or opening it to take a glance to see everyone including the uniformed court officers. Writer would be easily noticed by anyone who had a general description of my height, weight, build, along with my uniform and name tag. Even if Mr. Menzer chose to go inside every courtroom for 30 seconds each, a casual walk on each floor can be concluded in 5 minutes or less. Even doubling that time to a maximum of 10 minutes there is no way that checking each courtroom in 36 District Court could take close to an hour. Thay includes use of the elevator or stairs to different floors.

According to Mr. Menzer's affidavit, on Tuesday, March 18, 2025, (one of the days he had information that writer was working in the court) Mr. Menzer went to 36th District Court and only made inquiry to one person regarding Ms. Williams the director. After being informed she was not in the building he left without making any attempts to locate writer in any of the courtrooms.

**ALTERNATE SERVICE TO THE DIRECTOR AND CHIEF JUDGE OF 36th DISTRICT COURT**

Plaintiff counsels' motion for alternate service indicates 36th District Court was served with a federal subpoena to produce the address of Writer. Counsel for 36th District objected to the requested information and alleged that Michigan and Federal law prohibited the disclosure of employee names and addresses without the consent of the person. Counsels for Plaintiff elected not to file a motion using the authority of this court to compel the management or Human Resources personnel of 36th District Court to comply with the subpoena. That motion could have

included the fact that, according to Plaintiff counsels' motion for alternate service, there was no evidence the laws on which the objection was based even existed.

On April 29, 2025, this Court issued an order for alternate service, prepared by plaintiff counsels which read "Plaintiff may utilize alternate service to serve Writer by service via first class mail to the attention of the 36th District Court Service Director and the Chief Judge of the 36th District Court." (**Exhibit-4, a copy of the order for alternate service**)

The affidavit for requests of entry of default on ECF No. 55, paragraph one, indicated that "The summons and complaint was served on May 12, 2025, via First Class Mail Per 04/29/25 Order at c/o the 36th District Court Service Director (Anika Williams) and c/o the 36th District Court Chief Judge William McConico by First Class Mail Per Judge Altmans 04/29/25 Order to 421 Madison, St., Detroit, MI 48226."

There is no documentation or evidence regarding whether the Director or the Chief Judge ever received the Summons and Complaint. **Note: The May 12, 2025 docket entry for this case, in all capital letters reads, "NO GREEN CARD ATTACHED/CAN'T VERIFY SERVICE DATE)."** Further, Writer never received, what was alleged to be in the package to the director and chief Judge. According to the language on page five of the Order Granting in Part Plaintiff's Motion for alternate Service (ECG No. 47) which was drafted by plaintiff's counsels, "Plaintiff may utilize alternate service to serve Taylor by service via first class mail to the attention of the 36th District Court Service Director and the Chief Judge of the 36th District Court."

If the Director and Chief Judge were ever served with the documents, there was no other action or notification included in the order detailing what they were required to do with the documents once they were received. **There was nothing in the order to indicate the Director**

**or Chief Judge had to notify Writer they had the documents or they were ordered to forward the documents to me.** That may be the reason Writer never received any of the documents if they were delivered.

Writers last day of working at 36th District Court was, Wednesday April 30, 2025. He was scheduled to return to work on Tuesday May 6, 2025. My last day working at the court was twelve days before Plaintiff's counsels mailed the documents to the court. There is no indication of when or if they were received. On May 3, 2025 Writer noticed an envelope on my door from 36th District Court Human Resources Division containing a letter which read as follows, "Mr. Taylor: this correspondence is to inform you that effective immediately, you are being removed from the schedule on an as- needed basis independent contractor while an investigation of a complaint is completed." **Exhibit-5, copy of envelope and letter from 36 District Court Human Resources.** The letter was hand delivered because it had no postmark or postage. It only indicated that my removal from the schedule involved some type of investigation on a complaint. There was no indication what the complaint was, who made it, when or where it occurred, who was doing the investigation or what the investigation entailed.

**Letter from the Fieger Law Office**

Writer's first communication regarding the existence of his name on the lawsuit arrived in documentation the received in the mail from Plaintiff's law firm, which was postmarked July 25, 2025. It contained all of the documents mentioned in the accompanying letter but no summons was included in the package, as required by Fed.R.Civ.P 4. The letter did not indicate a summons was enclosed.

Review of the information stated above clearly indicates Writer was never served with a Summons. Writer only received a copy of the First Amended Complaint, the Motion to Extend

Summons and for Alternate Service, the Order to Extend Motion and Affidavit for Entry of Default and the Order for Entry of Default after July 25,2025. None of these documents were served timely and none of them gave Writer reasonable notice that he was a party to any litigation  until months after all these documents were generated and alleged to have been served on Writer.

**Although the process server for Plaintiff confirmed by affidavit that he received information on February 28 2025, that writer only worked on Tuesday and Wednesday, nowhere in the affidavit does it indicate that anyone ever inquired what courtroom writer could be located in on those days.** After Mr. Menzer  received information that Writer only worked Tuesday and Wednesday, he even showed up looking for Writer on days when they knew I was not working or in the building. Even if subsequently Plaintiff's counsels found information that it was the preference of 36th District Court for no persons to be served in the building, by not making  a diligent and reasonable search for me on the days that I was working, they omitted the opportunity to inform Writer of the litigation and at least personally discuss arrangements to serve me after work or request a home address or e-mail. All of the missed opportunities and requesting information from other defendants about my address instead of where I was working in the court created a number of missed opportunities to give me notice and arrange service.

There has been no culpable actions on the part of Writer to dwarf these proceedings.

## PREJUDICE TO PLAINTIFF

Any claim of prejudice to Plaintiff caused by delay is minimum to non-existent. If there is any very minimum prejudice, it was all created by Plaintiff's refusal to use reasonable efforts, and basic logic with the information provided to them, to notify Writer of the litigation. The

prejudice in this situation is a monumental blow to the Writer not the plaintiff. Because of Plaintiff's failure to utilize the numerous opportunities to serve Writer or at least give me notice of this litigation; I have effectively been denied any notice that I was the defendant in this case. I have also been denied any opportunity for discovery, denied any opportunity to retrieve a copy of the video of this incident from YouTube, because it has now been removed, and denied any opportunity to cross-examine witnesses. With the entry of default I have been completely denied any opportunity to defend against the numerous false allegations stated in the complaint. The reality is, if I am not successful in getting the entry of default set aside, I have completely lost a fight that I never knew I was ever involved in. This whole litigation may have passed me by and no one bothered to tell me about it. From my point of view that is the ultimate definition of prejudice.

## **MERITORIOUS DEFENSE**

A meritorious defense generally refers to a defendant's stated reasons why the plaintiff's claim is invalid, focusing on the substance of the case rather than the technicalities. It is a defense that, if proven, would constitute a complete defense to the lawsuit. Essentially, it is a defense that has a reasonable chance of success on the merits.

The complaint alleges that Writer, in his capacity as court officer for Judge King, assaulted her, handcuffed, falsely imprisoned her, and took her into the detention area of the courtroom where he was present as she was demanded to disrobe and put on an orange jail jumpsuit. The complaint alleges Writer then brought Plaintiff back into the court where the court conducted a mock hearing.

This writer did not participate in any of the allegations in the complaint. If Plaintiff's counsels were diligent in obtaining a video of the actions that took place in this courtroom, close observation would reveal that Writer never participated in the listed actions. Writer is requesting the opportunity, which has been denied him thus far, to defend in this matter, obtain a copy of

the video, if it now exists. This video would irrefutably verify the false allegations in the complaint. Writer requests that the entry of the default be set aside so that I am allowed to present my factual and legal meritorious defenses in this case.

## CONCLUSION

Writer is requesting this Honorable Court to set aside the entry of default. Taking into consideration that my declaration and Plaintiff's motion. ECF No. 39 indicates that I did not engage in any culpable conduct which led to the entry of default being issued. Second, Writer has meritorious defenses, as set forth in the declarations.  Third, no default judgment has been entered, that would prejudice the other party.

This Court is empowered to hear this litigation on an adversarial basis and not have Writer's defense muted by the issuance of an entry of default, in reliance on Plaintiff's disingenuous claims of exhausting all good faith efforts to serve me.

**WHEREFORE,** for the reasons set forth above Writer respectfully requests this Honorable Court set aside the entry of default under FRCP 55(c) or that plaintiff consider a stipulation to set it aside, after reviewing this matter.

Respectfully Submitted

**KEITH TAYLOR**

DATED: August 15, 2025

By:  */s/ Keith Taylor*
Defendant Pro Se

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

E.L.G., *a minor by Parent and Next Friend*                    Case No. 2:24-cv-12195
*Latoreya Till* and LATOREYA TILL,                              Hon. David M. Lawson

       Plaintiff,

v

JUDGE KENNETH KING,
Individually; UNIVERSAL PROTECTION
SERVICES d/b/a ALLIED UNIVERSAL
SECURITY SERVICES and/or ALLIED
UNIVERSAL SERVICES, LLC; KEITH
TAYLOR, individually; and CATHY R.
GREER-FORTE, Individually,

       Defendants.

---

**FIEGER, FIEGER,KENNEY**
**& HARRINGTON, P.C.**
JAMES J. HARRINGTON (P65351
GARY N. FELTY, JR. (P55554)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555/F:(248-355-3148
j.harrington@fiegerlaw.com

VALERIE HENNING MOCK (P55572)
MATTHEW J. HIGH (P82783)
**WILSON, ELSER, MOAKOWITZ**
**EDELMAN & DICKER, LLP**
Attorneys for Defendant Universal
Protection Service, LLC d/b/a Allied
Universal Security Services and
Cathy Greeer-Forte
17197 N Laurel Park Drive, Suite 201
Livonia, Michigan 48152
(313) 327-3100/(313) 327-3101 (F)
Valerie.mock@wilsonelser.com
Matthew.high@wilson.com

**THE PERKINS LAW GROUP**
TODD RUSSELL PERKINS (P55623)
Attorney for Defendant King
615 Griswold, Suite 400
Detroit, Michigan 48226
(313) 964-1702
tperkins@perkinslawgroup.net

**KEITH TAYLOR,**
Defendant Pro Se
20312 Westhaven
Southfield, MI 48075
(313)622-3376/(248) 237-4397 (F)
ktsheriff1963@gmail.com

1

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing documents were served n the

attorneys of record of all parties to the above cause by USD Eastern District CM/ECF

system on August 15, 2025.

By: */s/Keith Taylor*
   KEITH TAYLOR

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

E.L.G., *a minor by Parent and Next Friend*
*Latoreya Till* and LATOREYA TILL,

Case No. 2:24-cv-12195
Hon. David M. Lawson

Plaintiff,

v

JUDGE KENNETH KING,
Individually; UNIVERSAL PROTECTION
SERVICES d/b/a ALLIED UNIVERSAL
SECURITY SERVICES and/or ALLIED
UNIVERSAL SERVICES, LLC; KEITH
TAYLOR, individually; and CATHY R.
GREER-FORTE, Individually,

Defendants.

---

**FIEGER, FIEGER,KENNEY
& HARRINGTON, P.C.**
JAMES J. HARRINGTON (P65351
GARY N. FELTY, JR. (P55554)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555/F:(248-355-3148
j.harrington@fiegerlaw.com

VALERIE HENNING MOCK (P55572)
MATTHEW J. HIGH (P82783)
**WILSON, ELSER, MOAKOWITZ
EDELMAN & DICKER, LLP**
Attorneys for Defendant Universal
Protection Service, LLC d/b/a Allied
Universal Security Services and
Cathy Greer-Forte
17197 N Laurel Park Drive, Suite 201
Livonia, Michigan 48152
(313) 327-3100/(313) 327-3101 (F)
Valerie.mock@wilsonelser.com
Matthew.high@wilsonelser.com

**THE PERKINS LAW GROUP**
TODD RUSSELL PERKINS (P55623)
Attorney for Defendant King
615 Griswold, Suite 400
Detroit, Michigan 48226
(313) 964-1702
tperkins@perkinslawgroup.net

**KEITH TAYLOR,**
Defendant Pro Se
20312 Westhaven
Southfield, MI 48075
(313)622-3376/(248) 237-4397 (F)
ktsheriff1963@gmail.com

1

## DECLARATION OF KEITH TAYLOR

### I, KEITH TAYLOR, MAKE THIS DECLARATION IN SUPPORT OF MY MOTION TO SET ASIDE THE ENTRY OF DEFAULT:

1. I am one of the named defendants in the above captioned case;

2. The facts stated in this declaration are from my own personal knowledge and if sworn I will testify competently to them;

3. I first became aware that a lawsuit had been filed in federal court naming me as a defendant after receiving an envelope, in the mail postmarked, July 25, 2025.

4. There was a green registered return postage card, which was still attached to the envelope.

5. The envelope was addressed to me from the Fieger Law Firm and contained the documents listed in their letter which included a first amended complaint, naming me as a defendant; motion to extend service and allow alternate service; an order for alternate service; a request to enter a default; and an entry of default.

6. Surprise and confusion quickly set in as I read the documents because there were things written about me that I did not see, hear or participate in.

7. It was even more alarming when I learned  about all of the hearings and motions that had been going on in court for months without any notice from anyone.

8. One of the motions had an affidavit that showed that  Plaintiff's attorneys had information for at least two months before my last working day at the court, that I was working in 36th District court rooms every Tuesday and Wednesday.

2

9. Some of the documents indicated that during that time the attorneys kept asking Judge King and his lawyer for my home address even though there was no reason for either of them to know it.

10. Process servers for Plaintiff also repeatedly asked some of the management personnel at the court for my home address instead of just asking them or any of the other court officers what courtroom I was working in and walking there to talk to me.

11. During that time, they decided to keep asking everybody except me for my address and never asked what courtroom I was working in.

12. If anyone had asked some of the other court officers and some of the clerks, the information is as easy to obtain as it is to find out what courtroom a judge was in on that day.

13. Most times no one asks why you want to know what courtroom a judge is in and the request would be similar for a court officer.

14. Some of the documents made it seem like I was making it difficult for the attorneys and process servers to locate and serve me.

15. I never made any attempts to avoid contact with the process servers or attorneys because I didn't know they wanted to serve me.

16. One of the papers said the plaintiff's attorneys mailed federal court Documents about the case, to the Director and Chief Judge at the 36th District Court.

17. I never received those documents, but the order for them to be mailed to 36th District Court did not indicate the documents had to be forwarded to me and they were mailed twelve days after my last day working at the court.

18. During this incident I was one of two court officers assigned to that courtroom.

19. On that day I was the court officer assigned to the door where attorneys and the public entered the courtroom from the hall.

20. Contrary to the allegations in the complaint, I was not present, nor did I ever take Plaintiff to the detention area, participated in or observed Plaintiff being handcuffed or unhandcuffed.

21. I was not present in the detention area, nor did I observe or participate during any time when plaintiffs is alleged to have been asked to undress or put on a jumpsuit designated for jail detainees.

22. I was not present at any time, nor did I observe plaintiff during a period when it is alleged she was removed from the detention area at the rear of the courtroom, taken to a another holding room where she was detained or brought back to the detention area behind the courtroom.

23. One of the documents said the video of the incident was on YouTube but my search indicates it has been taken down.

24. I don't know what's on the video, but it could be used to clarify that I could not have handcuffed the plaintiff, nor was I present when she was asked to put on a jail jumpsuits because I wasn't in the area and could not have seen or heard it.

4

I declare under penalty of perjury under the laws of the United states that the foregoing

is true and correct.


Executed on August 15, 2025 in Southfield MI
*/s/ Keith Taylor*
Keith Taylor-Defendant Pro Se