**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 21, 2026

Ms. Katherine M. Beres
Wilson Elser
17197 N. Laurel Park Drive
Suite 201
Livonia, MI 48152

Mr. Robert G. Kamenec
Fieger Law
19390 W. Ten Mile Road
Southfield, MI 48075

Ms. Valerie H. Mock
Wilson Elser
17197 N. Laurel Park Drive
Suite 201
Livonia, MI 48152

Mr. Todd Russell Perkins
Law Offices
615 Griswold Street
Suite 400
Detroit, MI 48226

Re: Case Nos. 25-1558/25-1614, *Latoreya Till, et al v. Kenneth King, et al*
Originating Case No. 2:24-cv-12195

Dear Counsel,

The court today announced its decision in the above-styled cases.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0239p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

| | |
|---|---|
| LATOREYA TILL, as mother and conservator for ELG, a minor,<br>*Plaintiff-Appellee/Cross-Appellant*,<br><br>*v*.<br><br>KENNETH J. KING, a judge,<br>*Defendant-Appellant/Cross-Appellee*. | Nos. 25-1558/1614 |

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:24-cv-12195—David M. Lawson, District Judge.

Argued: July 28, 2026

Decided and Filed: August 21, 2026

Before: GILMAN, GRIFFIN, and READLER, Circuit Judges.

---

## COUNSEL

**ARGUED:** Todd Russell Perkins, PERKINS LAW GROUP, Detroit, Michigan, for Kenneth J. King. Robert G. Kamenec, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., Southfield, Michigan, for Latoreya Till. **ON BRIEF:** Todd Russell Perkins, PERKINS LAW GROUP, Detroit, Michigan, for Kenneth J. King. Robert G. Kamenec, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., Southfield, Michigan, for Latoreya Till.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. This appeal arises from an encounter between 15-year-old ELG and Kenneth J. King, a Michigan district court judge, during a vocational program for teenagers that took place in his courtroom. While Judge King was informing

students in the program about his career as a lawyer, ELG fell asleep. This offended Judge King, so he devised a plan to "scare her straight." ELG was placed in handcuffs, forced to wear a prison jumpsuit, and locked in a detention cell for several hours. Later that day, Judge King put ELG on "mock trial" before the other students in the program, which was streamed on the court's YouTube channel. The record does not reflect how the mock trial ended, but ELG was apparently permitted to go home without further incident.

Latoreya Till, as ELG's mother and acting on her daughter's behalf, filed suit, alleging that Judge King's conduct violated ELG's Fourth Amendment rights and constituted various torts under Michigan law. Judge King moved to dismiss on the basis that his alleged conduct is shielded by judicial immunity. The district court denied Judge King's motion, and he has filed an interlocutory appeal. Till has filed a cross-appeal based on an alternative theory to sustain the district court's ruling. For the reasons set forth below, we **AFFIRM** the decision of the district court.

## I. BACKGROUND

### A. Factual background

On August 13, 2024, 15-year-old ELG participated in a vocational program for teenagers that was put on by a nonprofit organization. That day, the students in the program learned about the career of being a lawyer. ELG and the other teenagers were seated in the gallery of Judge King's courtroom, where they observed a homicide proceeding presided over by Judge King. The court then went into recess, and Judge King left the bench.

Judge King subsequently asked if anyone in his teenage audience wanted to be a judge when they grew up. When one of them responded, Judge King removed his robe, placed it on the teenager whose hand was raised, and seated the young man on the bench. Judge King then spoke to the group about his career as a lawyer. "Although the court was no longer in session, Defendant Judge King broadcast his lecture publicly using the court's YouTube platform, permitting his followers and fan base to both observe and comment." (capitalization omitted). (All quotations in this Part I.A. are taken from the amended complaint.)

At some point during Judge King's lecture, ELG fell asleep. Judge King "berated and humiliated" ELG for nodding off. ELG apologized, but, shortly thereafter, she fell asleep again. Judge King then "confronted" ELG and "instruct[ed] her that perhaps she needed to go to the restroom and get a drink of water." He directed ELG to the restroom "because of what he had in store for her"—"a plan for the amusement of his followers and fan base to cast Ms. ELG, unwittingly, in what he later described as his own episode of [the television show] 'Scared Straight.'"

When ELG returned to the courtroom, she went to sit in the gallery "beside her classmates before Defendant Judge King convened court." (capitalization omitted). ELG was greeted by court officer Keith Taylor, who "accused [ELG] of disrespecting the judge." Taylor then "directed Ms. ELG to the side of the bench and restricted her movement by ordering her to stand still, as a real defendant was escorted out of a detention cell." Next, Taylor "directed Ms. ELG into the detention cell and locked her inside while Defendant Judge King brought court into session."

"Approximately ten minutes later" a different "court officer, Defendant Cathy R. Greer-Forte[,] opened the detention cell, handcuffed Ms. ELG, and directed her to another cell where she was told to strip her clothing and put on a jail jumpsuit." (capitalization omitted). ELG "removed her hoodie," but she told Greer-Forte that "she would not take off the rest of her clothing." She was then "permitted to put the jumpsuit [on] over her clothing before being handcuffed and transported back to the original holding cell, where she was held captive for hours, before being re-cuffed and brought into the courtroom after the close of the day's proceedings, where a phony mock trial was convened."

At the beginning of the mock trial, Judge King "caused a random private attorney to pose as counsel for" ELG. "On live internet 'television,'" Judge King then "coerced [ELG] to disclose her name and other personal information." He "threatened to send" ELG to "'juvey,'" "with vulgar stories of beatings and feces at the county's juvenile detention center, falsely casting her as a dishonest, disrespectful delinquent."

Then, "while panning the camera to focus upon his juvenile audience for the benefit of his internet fans, Defendant Judge King asked Ms. ELG's peers to serve as a mock jury of public opinion and decide whether to let her go home to her mother and grandmother, or to serve time in the juvenile jail." (capitalization omitted). Later, Judge King "admitted to the press that the foregoing was simply his version of 'Scared Straight,' as he was going to teach this teen a lesson for disrespecting him." Judge King told "reporters that Ms. ELG had a bad attitude, was disrespectful[,] and required his mentorship, while simultaneously offering a watered-down acknowledgment that he lacked jurisdiction to hold Ms. ELG in contempt, knowing the conduct that disturbed him occurred during a lecture where he served not as judge, but as teacher, in a venue that he had transformed from courtroom to classroom, telling the public that he probably did not have the authority to jail her." No case number or court record is associated with any of these "sham proceedings" involving ELG.

**B. Procedural background**

This lawsuit was filed in August 2024. In October 2024, Judge King filed a motion to dismiss in lieu of an answer. A response to Judge King's motion to dismiss was filed the following month. In December 2024, an amended complaint was filed. Although Judge King's motion to dismiss had been directed at the original complaint, the parties agreed that his motion could be considered by the district court as a response to the complaint as amended.

The amended complaint alleges five causes of action against Judge King: (1) malicious prosecution and (2) unlawful arrest, both brought under 42 U.S.C. § 1983 as alleged violations of ELG's Fourth Amendment rights; and (3) intentional infliction of emotional distress, (4) invasion of privacy, and (5) false arrest and imprisonment, these latter three causes of action being based on alleged violations of Michigan law. Also alleged are claims against other court officers who are not parties to this appeal.

In May 2025, the district court denied Judge King's motion to dismiss. Judge King timely filed this interlocutory appeal. Till then timely cross-appealed for the sole purpose of defending the district court's decision on an alternative ground.

## II. ANALYSIS

### A. Standard of review

"When considering a motion to dismiss under Rule 12 [of the Federal Rules of Civil Procedure], we review the district court's decision de novo." *Booth Fam. Tr. v. Jeffries*, 640 F.3d 134, 139 (6th Cir. 2011). "[W]e accept [the complaint's] factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and only then determine whether those facts and inferences plausibly give rise to an entitlement to relief." *Hodges v. City of Grand Rapids*, 139 F.4th 495, 504 (6th Cir. 2025) (quoting *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020)). "The availability of absolute judicial immunity in the context of a Rule 12(b)(6) motion to dismiss presents a question of law." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).

### B. The district court did not err in finding that Till has plausibly alleged that Judge King was engaged in nonjudicial acts when dealing with ELG

Judge King argues on appeal that his conduct with regard to ELG, even if considered inappropriate, is still covered by the cloak of judicial immunity. Till's initial response is that Judge King has forfeited this argument because he failed to identify any error in the district court's reasoning. True enough, we generally require the appellant to detail his disagreement with the district court's decision. *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019) ("[W]here a plaintiff fails to address the district court's reasoning in disposing of a claim on summary judgment or motion to dismiss, we have deemed the claim forfeited." (quoting *Rees v. W.M. Barr & Co.*, 736 F. App'x 119, 124–25 (6th Cir. 2018))). But we have the "discretion to excuse" a forfeiture in appropriate circumstances. *Mosier v. Evans*, 90 F.4th 541, 555 (6th Cir. 2024). Although Judge King has not fleshed out his disagreement with the district court's reasoning, his brief discusses both the law and the facts applicable to this case, so there is no unfair surprise to Till. *See Aaron v. King*, 171 F.4th 822, 829 (6th Cir. 2026) (explaining that the "forfeiture rule exists 'to avoid surprise and prevent sandbagging of appellees'" (quoting *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 415 (6th Cir. 2021))). Under these circumstances, we decline to declare a forfeiture of Judge King's argument that he is entitled to judicial immunity.

We will instead address the merits (or the lack thereof) regarding that argument. "[J]udges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Brookings*, 389 F.3d at 617. But "a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). To determine whether a particular act is "judicial" or "non-judicial," we consider two factors: (1) "whether the act in question is a function that is 'normally performed by a judge,'" and (2) "whether the parties dealt with the judge in his or her judicial capacity." *Brookings*, 389 F.3d at 617 (quoting *Stump v. Sparkman,* 435 U.S. 349, 362 (1978)).

***1. The district court correctly found that Till has plausibly alleged that Judge King's actions did not constitute a "function normally performed by a judge"***

As to the first factor—whether Judge King's actions reflect a "function normally performed by a judge"—"this court has recognized that 'paradigmatic judicial acts,' or acts that involve resolving disputes between parties who have invoked the jurisdiction of a court, are the touchstone for [the] application of judicial immunity." *Id.* at 618 (quoting *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997)). "Conversely, whenever an action taken by a judge is not an adjudication between the parties, it is less likely that it will be deemed judicial." *Id.* And where a judge's actions are "patently motivated by private interests," the actions are less likely to reflect a function normally performed by a judge. *Barnes v. Winchell*, 105 F.3d 1111, 1119 (6th Cir. 1997).

Judge King argues that his actions with regard to ELG reflect the "function[s] normally performed by a judge" of "control[ling] the form and the function of [his] courtroom" and "reprimand[ing]" ELG for "flouting the judicial authority." We recognize that "exercis[ing] control over [the] courtroom" can be a judicial act. *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994). And under Michigan law, judges can punish individuals for "[d]isorderly, contemptuous, or insolent behavior, committed during [a court] sitting, in [the court's] immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority." Mich. Comp. Laws § 600.1701(a).

But not all actions taken by a judge in his courtroom are protected by judicial immunity. All reasonable jurists would presumably agree, for example, that a judge cannot shield himself from suit if he draws a firearm and shoots an observer who has dozed off in his courtroom. Or if he sexually assaults a litigant. A line must therefore be drawn between the actions that a judge can take in his courtroom under the cloak of judicial immunity and those that he cannot. *See Gibson v. Goldston*, 85 F.4th 218, 225 (4th Cir. 2023) ("[J]udicial immunity is sometimes withheld from judges even for actions taken inside their courtroom." (citing *Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974) (denying judicial immunity when a judge personally removed someone from his courtroom by using excessive force))).

To qualify as a judicial act, a judge's actions must "further[] [an] official act or sanction." *Barrett*, 130 F.3d at 261 (holding that "an interview with the media concerning the litigant" is not shielded by judicial immunity because it "furthers no official act or sanction," but rather "simply informs the public about the judge's position or views").

Here, Till has put forth sufficient allegations to show that Judge King's actions did not further an "official act or sanction," *see id.*, but rather related to Judge King's "private interests," *see Barnes*, 105 F.3d at 1119. Indeed, Till alleges that Judge King had ELG locked in a "holding cell" and conducted a "phony mock trial" only because Judge King was offended by ELG nodding off while he was lecturing about his career as a lawyer. And Judge King is alleged to have "admitted to the press" that he was simply intending to "scare" ELG because she had "disrespect[ed]" him.

Till also alleges that there is no case number, order, or any other court record associated with the events that transpired. This matters because the existence of a court record or order indicates that a judge's actions constituted judicial acts. *See Stump*, 435 U.S. at 360–61 (explaining that a judge was entitled to judicial immunity despite procedural deficiencies because the judge "took cognizance" of his actions by signing a petition and "act[ing] upon it" (quoting *In re Summers*, 325 U.S. 561, 567 (1945))). The absence of such an order or record here therefore suggests the opposite—that Judge King's actions were nonjudicial.

Our consideration of this case is also informed by the decision from one of our sister circuits in *Rockett ex rel. K.R. v. Eighmy*, 71 F.4th 665 (8th Cir. 2023). In that case, the Eighth Circuit held that a judge was not entitled to judicial immunity for disciplining two children in his courthouse. *Id.* at 672. The judge, while "unrobed," encountered the children in the lobby of the courthouse, where they were complaining to their parents. *Id.* at 668. The judge "took [the children] to a conference room" and "told them they needed to leave Hollywood." *Id.* "When the children . . . protest[ed], [the judge] decided to put them in jail to show 'what [he] can do.'" *Id.* We find persuasive the Eighth Circuit's holding that the judge's effort to discipline and scare the children did not reflect a "function normally performed by a judge." *See id.* at 672.

On the other hand, this court's unpublished decision in *Orta v. Repp*, No. 23-3034, 2023 WL 5666161 (6th Cir. Sept. 1, 2023), is the case primarily relied on by Judge King to support his argument that he is entitled to judicial immunity. In *Orta*, the plaintiff was sitting in the public gallery of a courtroom waiting for her boyfriend's case to be called when the presiding judge "ordered bailiffs to escort [the plaintiff] from the courtroom to take a drug test" because he was "concern[ed] for her wellbeing." *Id.* at *1. After the plaintiff "refused to submit to the testing[,] . . . [s]he discovered [that] law enforcement had received instructions to prevent her from leaving the building." *Id.* "The bailiffs brought [the plaintiff] back before" the judge later that afternoon, and the judge "held [her] in contempt of court for refusing to take the drug test." *Id.* He then sentenced her to remain in jail for ten days or until she submitted to the testing. *Id.*

This court in *Orta* concluded that the judge "performed . . . traditional judicial act[s] when he presided over [the plaintiff's] boyfriend's probation-violation and driving-infraction proceedings in his courtroom," and when he held "[the plaintiff] in contempt and sentenc[ed] her to jail." *Id.* at *2. In so doing, the court connected the judge's initial actions of ordering the plaintiff to take a drug test to the judicial function of presiding over a hearing, and determined that the judge's contempt finding and the plaintiff's sentence also constituted judicial functions despite the plaintiff not being a litigant nor appearing before the judge in any official capacity. *Id.*

In addition to *Orta* being unpublished and therefore nonprecedential, the facts of *Orta* are materially distinguishable from the facts here. The judge in that case was on the bench preparing

for a case to be called when he ordered the plaintiff to take a drug test. *Id.* at *1. The judge also formally held the plaintiff in contempt and sentenced her to jail. *Id.* Here, by contrast, Judge King had left the bench, taken off his robe, and was speaking to teenage students in a vocational program about his career as a lawyer. And there is no case number, order, or any other court record associated with the events that transpired.

Judge King makes little effort to apply precedents beyond *Orta* to the facts of this case. Instead, he cites to several additional cases from our sister circuits and the Supreme Court that address judicial immunity. He asserts that "[u]nder all Federal and State case law, [Till's] arguments must fail." To the contrary, these cases are readily distinguishable.

Three of the cases cited by Judge King present factual situations much closer to the "paradigmatic judicial act[]" of "resolving disputes between parties who have invoked the jurisdiction of a court" than to the facts of this case. *See Brookings v. Clunk*, 389 F.3d 614, 618 (6th Cir. 2004). In two of those cases, the plaintiff encountered the judge because the plaintiff had official business before the court either as a defendant or as an attorney representing a defendant. *See Ashelman v. Pope*, 793 F.2d 1072, 1075–78 (9th Cir. 1986) (granting judicial immunity where the plaintiff appeared as a defendant before the judge in a case that the judge was presiding over); *Mireles v. Waco*, 502 U.S. 9, 10–12 (1991) (granting judicial immunity where the plaintiff was a public defender whom the judge ordered to be brought into the courtroom in connection with a pending case).

In the third case cited by Judge King, *King v. Myers*, 973 F.2d 354, 356, 359 (4th Cir. 1992), the judge "effectuated the warrantless arrest" of the plaintiff and directed a police officer to prepare criminal complaints. The charges were eventually dropped. *Id.* at 356. But the existence of charges and criminal complaints reflects an "official act or sanction." *See Barrett*, 130 F.3d at 261.

Finally, Judge King cites *Green v. Maraio*, 722 F.2d 1013 (2d Cir. 1983). But that case dealt with whether the judge's actions were in the "clear absence of all jurisdiction," and the court did not analyze whether the judge's actions were "judicial acts." *See id.* at 1016–17.

In sum, Till's allegations describe Judge King as abusing the machinery of the court through fake proceedings designed to scare ELG because she offended him while he was telling a group of teenagers about his career as a lawyer. Based on these allegations, we conclude that Till has put forth sufficient facts to show that Judge King's actions did not reflect a "function normally performed by a judge."

### *2. The district court correctly found that Till has plausibly alleged that Judge King was not acting in his judicial capacity when dealing with ELG*

The second factor that we consider in evaluating whether a judge's actions were "judicial acts" is "whether the parties dealt with the judge in his or her judicial capacity." *Brookings*, 389 F.3d at 617–18. Here, Till alleges that ELG encountered Judge King in his courtroom only *after* all judicial proceedings had ended, and Judge King was using the location solely to lecture the students in the vocational program. Till has thus plausibly alleged that ELG encountered Judge King in his "private, non-judicial life" as a lecturer or teacher. *See id.* at 623 (noting cases in which judges were denied judicial immunity on the basis that the judges in those cases encountered the plaintiffs in their "private, non-judicial li[ves]").

Till's argument is supported by the fact that, at the time of ELG's "mock trial," court was no longer in session. And, according to the amended complaint, Judge King himself confirmed that the purpose of the "mock trial" was simply to "scare" ELG because she had "disrespect[ed]" him. Till has thus pleaded facts that show that, at the time of Judge King's interactions with ELG, he was not acting in his judicial capacity.

In sum, Till has set forth factual allegations showing that Judge King was neither performing a "function normally performed by a judge" nor acting in his "judicial capacity." We therefore conclude that Judge King is not entitled to judicial immunity at the motion-to-dismiss stage of this case.

## C. The district court did not err in ruling that Till's alternative theory to overcome judicial immunity has no merit

Finally, we turn to Till's alternative argument that Judge King is not entitled to judicial immunity because his actions were performed in the "complete absence of all jurisdiction."

*See Mireles*, 502 U.S. at 12. This alternative argument is the basis of Till's cross-appeal in this case. We first note that the cross-appeal was unnecessary to our consideration of Till's argument. *See Nw. Airlines, Inc. v. County of Kent*, 510 U.S. 355, 364 (1994) ("A prevailing party need not cross-petition to defend a judgment on any ground properly raised below, so long as that party seeks to preserve, and not to change, the judgment.").

In any event, this alternative theory is premised on a judge's actions *being in fact* "judicial in nature," yet also in the "complete absence of all jurisdiction." *See Mireles*, 502 U.S. at 12. A classic example is of a probate judge purporting to exercise jurisdiction over a criminal trial. *See Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994).

But because this argument is predicated on the judge actually exercising judicial authority, it is inapplicable here. Till's entire theory of the case, after all, is that Judge King was acting without any judicial authority at all in dealing with ELG, and this was the basis for the district court to deny Judge King's motion to dismiss. Under these circumstances, we find no error in the district court's ruling that Till's alternative theory to overcome judicial immunity has no merit.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the decision of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 25-1558/1614

LATOREYA TILL, as mother and conservator for ELG, a minor,

Plaintiff - Appellee/Cross - Appellant,

v.

KENNETH J. KING, a judge,

Defendant - Appellant/Cross - Appellee.

**FILED**
Aug 21, 2026
KELLY L. STEPHENS, Clerk

Before: GILMAN, GRIFFIN, and READLER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THESE CASES were heard on the record from the district court and were argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of Kenneth J. King's motion to dismiss on the basis of judicial immunity is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk